OPINION OF THE COURT
Chief Judge Cooke.
Petitioners own two parcels of land. One, known as the "Culver” property, contains 38 acres of freshwater wetland out of a total of approximately 51 acres. The second tract has an area of about 43 acres and an 8-acre wetland referred to as "Spears’ Bog”. Both properties were classified as wetlands, the first because of its size, the second because it was determined by the Commissioner of Environmental Conservation (the Commissioner) to be an area of unusual local importance (ECL 24-0301, subd 1).
In March of 1977 petitioners applied to the Commissioner for a permit allowing extraction of humus, sand and stone from the wetlands.[1] After a public hearing, where undisputed evidence showed that the proposed mining activities would lead to all but complete destruction of the wetlands, the Commissioner denied the application. Although petitioners conceded during the hearing that a grant of the permit would be inconsistent with the purposes of wetland regulation, Richard A. Spears, the sole witness for petitioners, voiced his opinion that mining was the only use of the property which would produce a reasonable economic return.
Petitioners commenced this proceeding, seeking an order directing the Commissioner to issue the permit, or institute condemnation proceedings. Supreme Court, Sullivan County, transferred the proceeding to the Appellate Division. Finding that petitioners had been deprived of all reasonable return on their property, a divided Appellate Division granted the requested relief. We now reverse and remit to Supreme Court for an evidentiary hearing.
The Freshwater Wetlands Act, enacted in 1975, was designed "to secure the natural benefits of freshwater wetlands, consistent with the general welfare and beneficial economic, social and agricultural development of the state” (ECL 24- *260 0103). Thus, a balance is struck between ecological and economic considerations by preserving and protecting freshwater wetlands while permitting reasonable economic use and development.[2] To that end the Commissioner was empowered to identify the freshwater waterlands of the State (ECL 24-0301). Property so designated becomes subject to rigorous regulation, with certain uses permitted as of right and others permissible only by permit. As of right uses include recreational or commercial fishing, shell-fishing, aquaculture, hunting and trapping (ECL 24-0701, subd 3). Other permitted activities are grazing and watering livestock, harvesting natural products of the land, selective cutting of timber, and draining and other use of the land for growing agricultural products (ECL 24-0701, subd 4). Activities not expressly permitted may be conducted only if a permit is granted (ECL 24-0701, subd 1). A permit may issue upon a showing by the applicant that the proposed use is "in accord with the policies and provisions of’ the act (ECL 24-0703, subd 4; 24-0705, subd 3). Until the final wetland classifications are promulgated by the Commissioner, interim permits are available on generally the same basis as final permits (6 NYCRR Part 662).
To render the act free from constitutional infirmities, the Legislature included section 24-0705 which affords a property owner judicial review of a decision denying a permit. Within the context of the review proceeding, a court is authorized to determine whether denial of the permit was proper and, if so, whether the regulation of the particular land has become so rigorous as to amount to a taking without just compensation (ECL 24-0705, subd 7). Hence, each aggrieved landowner is entitled to a day in court, at which time it may be determined if application of the act to the land is consistent with constitutional strictures. If application of the wetland regulations to a particular parcel would result in a taking, the remedy is to direct the Commissioner to either grant the requested permit or institute condemnation proceedings. *261 Given this remedy, a formal declaration as to the constitutionality of the act in any particular instance is unnecessary (compare French Investing Co. v City of New York, 39 NY2d 587, 594-595).
A proceeding by a wetlands owner under section 24-0705 (subd 7) is somewhat novel and possesses a dual nature. First, the reviewing court must determine whether the denial of the permit had a rational basis and was supported by substantial evidence (cf. Matter of Fuhst v Foley, 45 NY2d 441, 444; Matter of Cowan v Kern, 41 NY2d 591, 598-599). If the administrative decision is sustained, it then becomes necessary to evaluate whether the wetlands regulations, considered together with the denial of the permit, would work an unconstitutional taking of petitioner’s property. For the latter aspect of the proceeding, there must be an evidentiary hearing at which the landowner and the State may produce expert testimony and other evidence bearing upon the regulation’s effect on the value of the subject parcel[3] (see, e.g., Matter of Charles v Diamond, 41 NY2d 318, 326-328). It is only after such a hearing that the extent of the financial hardship, if any, may be meaningfully assessed.
On the merits, then, the threshold issue is whether the denial of the interim permit had a rational basis and was supported by substantial evidence. In the present case, little discussion of this point is necessary. At the hearing, petitioners conceded, in essence, that the proposed mining activity would virtually destroy the wetlands. Thus, issuance of a permit by the Commissioner was proscribed by the act itself (ECL 24-0705, subd 3). But even if this were not so, petitioners’ failure to supply the data required to support its application might have constituted an independent ground for the denial. In these circumstances, therefore, we cannot conclude that the Commissioner’s decision was unwarranted or improper.
Proceeding to the second tier of analysis, it must be determined whether the wetlands act, coupled with the denial of the interim permit, has placed such an onerous burden on the property that a taking must be deemed to have occurred. The *262 notion that there are limits beyond which even the most exemplary regulatory scheme may not tread is not new. Indeed, this court has not hesitated to condemn statutes or ordinances which completely deprive the owner of the beneficial use of private property under the guise of regulation (see, e.g., Lutheran Church in Amer. v City of New York, 35 NY2d 121, 130; Vernon Park Realty v City of Mount Vernon, 307 NY 493, 498-499). The evil in such a case, although often referred to as a taking, lies not in an actual physical entry but rather in regulation which results in economic destruction (see, e.g., French Investing Co. v City of New York, 39 NY2d 587, 594-597, supra). At the same time, of course, it is important to recognize the breadth of the State’s police power and the means by which that power may be exercised. In view of these conflicting considerations, courts have encountered difficulty in formulating a bright-line standard for differentiating permissible police power measures from overly vigorous and hence unconstitutional impositions (see, e.g., Penn Cent. Transp. Co. v New York City, 438 US 104, 123-124, affg 42 NY2d 324; compare Pennsylvania Coal Co. v Mahon, 260 US 393, with Goldblatt v Hempstead, 369 US 590; see, generally, Sax, Takings and the Police Power, 74 Yale LJ 36).
Nonetheless, there has evolved from our decisions a standard which, while retaining an element of flexibility, is capable of practical application. Under this test, a land use regulation — be it a universally applicable local zoning ordinance or a more circumscribed measure governing only certain designated properties — is deemed too onerous when it "renders the property unsuitable for any reasonable income[,] productive or other private use for which it is adapted and thus destroys its economic value, or all but a bare residue of its value” (French Investing Co. v City of New York, 39 NY2d 587, 596, supra; see, e.g., Marcus Assoc. v Town of Huntington, 45 NY2d 501, 506; Modjeska Sign Studios v Berle, 43 NY2d 468, 474-475; Penn Cent. Transp. Co. v City of New York, 42 NY2d 324, 329-331, 336, affd 438 US 104, supra; McGowan v Cohalan, 41 NY2d 434, 436; Williams v Town of Oyster Bay, 32 NY2d 78, 82; see, also, Lutheran Church in Amer. v City of New York, 35 NY2d 121, 130, supra). Although the particulars of this rule have been considered elsewhere (see, e.g., Penn Cent. Transp. Co. v City of New York, supra, at pp 330-331, 333; McGowan v Cohalan, supra, at pp 432-438; Matter of National Merritt v Weist, 41 NY2d 438, 445-446; see, generally, 1 *263 Anderson, New York Zoning Law and Practice, §§ 2.13-2.16), a few points bear emphasis. A petitioner who challenges land regulations must sustain a heavy burden of proof, demonstrating that under no permissible use would the parcel as a whole be capable of producing a reasonable return or be adaptable to other suitable private use (see Penn Cent. Transp. Co. v New York City, 438 US 104, 130-131, supra; McGowan v Cohalan, supra, at pp 436-438; Williams v Town of Oyster Bay, supra, at p 82). To carry this burden, the landowner should produce "dollars and cents” evidence as to the economic return that could be realized under each permitted use (Matter of National Merritt v Weist, 41. NY2d 438, 445-446, supra; see Megin Realty Corp. v Baron, 46 NY2d 891, 892-893; Marcus Assoc. v Town of Huntington, 45 NY2d 501, 506, supra). Only when the evidence shows that the economic value, or all but a bare residue of the value, of the parcel has been destroyed has a "taking” been established (e.g., French Investing Co. v City of New York, 39 NY2d 587, 596, supra). This is not to say, of course, that the State may blithely sit back in every instance and rely upon the burden of proof. Rather, if the landowner adduces proof of sufficient quality and weight to make out his case, the burden falls upon the State to go forward and rebut petitioner’s evidence or otherwise justify application of the statute. Thus, should the State fail to put in any evidence, it may, in some cases, run an appreciable risk.[4]
In the present circumstances, the record is insufficient on the taking issue. Perhaps this is a result of the novelty of the procedure, and the fact that no judicial hearing has yet been held. Indeed, the only relevant evidence is testimony at *264 the permit hearing,[5] given at a time when the taking issue had not even emerged. In essence, the testimony consists of petitioner Richard A. Spear’s bare conclusions that no activity, other than the proposed mining, would afford a reasonable return on the property. Standing alone, this is insufficient to make out a case of confiscatory application of the act (see Matter of Charles v Diamond, 41 NY2d 318, 327-328, supra). Conspicuously absent from the record is any evidence concerning the value of the properties, their purchase price, the uses to which they may be adapted, or the return which may be realized from permitted uses or even from the proposed mining. In view of the inadequacy of. the record, and the lack of a trial or hearing on the taking question, there should be a remittal. In this manner, the parties can be afforded a reasonable opportunity to litigate the issue in the proper forum.
Finally, we note that the Appellate Division in this case had remitted to the Commissioner for further proceedings as to costs, rendering its order nonfinal (cf. Cohen and Karger, Powers of the New York Court of Appeals, § 11, at p 43). Thus, although the appeal taken as of right must be dismissed, the court, on its own motion, grants leave to appeal.
Accordingly, the appeal taken as of right should be dismissed, without costs, upon the ground that the order appealed from does not finally determine the proceeding within the meaning of the Constitution. On the court’s own motion, leave to appeal should be granted (CPLR 5602, subd [a], par 2). The order of the Appellate Division should be reversed, without costs, and the matter remitted to Supreme Court, Sullivan County, for a hearing in that court on the taking issue.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Appeal taken as of right dismissed, without costs, upon the ground that the order appealed from does not finally determine the proceeding within the meaning of the Constitution. On the court’s own motion, leave to appeal granted (CPLR 5602, subd [a], par 2). Order reversed, without costs, and the *265 matter remitted to Supreme Court, Sullivan County, for a hearing in accordance with the opinion herein.

. Petitioners admitted that their application was not accompanied by the detailed plans and maps, contemplated by statute (ECL 24-0703, subd 1) and regulation (6 NYCRR 662.5 [b]).

. The legislative findings underlying the act state that "[t]he freshwater wetlands of the state of New York are invaluable resources for flood protection, wildlife habitat, open space and water resources” (ECL 24-0105, subd 1). The Legislature concluded that loss of freshwater wetlands would deprive the people of the State of some or all of the following benefits: flood and storm control; wildlife habitat; protection of subsurface water resources; recreational areas for hunting, fishing, boating, camping and other uses; natural pollution treatment; erosion control; open space for aesthetic appreciation; and sources of nutrients in freshwater food cycles (ECL 24-0105, subd 7).

. Evidence pertaining to the taking issue would not be relevant to the question to be decided at the permit hearing and thus would not be contained on the record made at the administration level. This is especially so since an applicant no longer needs to demonstrate hardship, i.e., economic damage, to obtain an interim permit (see L 1977, ch 654, § 9).

. One difficulty faced under the act by both the landowner and the Commissioner should be identified. Since the statute contains a catalogue of uses permitted as of right, and also allows the Commissioner to issue permits for other uses, the landowner may not initially know the full spectrum of possible uses to which his evidentiary proof must be addressed. The availability of uses not permitted as of right will depend upon the scope of permits which the Commissioner is willing to grant. While the property owner should not, for this reason, be relieved of his heavy burden of proof, he should be afforded a reasonable opportunity to obtain notice of the uses, if any, for which the Commissioner would issue a permit. The manner in which this notice may be provided will vary with the circumstances of each case, and the hearing court should, in the first instance, be free to fashion an acceptable remedy. In some instances, it may be appropriate, for example, to require the Commissioner to come forward prior to the hearing with some indication of the uses which he would permit. In other cases, where the extent of permitted uses becomes evident at the hearing, it may. suffice to grant the landowner a continuance, if otherwise warranted, to allow him an opportunity to address his burden of proof.

. At the hearing, in attempting to establish eligibility for an interim permit, petitioners endeavored to show financial hardship. Hardship had been a statutory prerequisite to the issuance of an interim permit, but has since been eliminated. (L 1977, ch 654, § 9). The State did not rebut the evidence of hardship, concentrating instead on the merits of the application.