Chief Judge Cooke
(dissenting). The legislation involved here is not a valid exercise of the police power. Rather, it authorizes an unconstitutional taking of plaintiff’s property without just compensation. Although the concepts of a “taking” and the exercise of the State’s police power are related and sometimes intertwined, they are distinguishable. By its decision today, the court unnecessarily muddies the distinction between the two concepts and eliminates an important protection against unfair invasions of private property. A dissent therefore is in order.
Plaintiff, who owned an apartment building, alleges that TelePrompter ran a television cable across the roof of the building, placed other equipment on the roof and dropped another cable down the front of the five-story brownstone to provide service to a first floor tenant. In 1972, the Legislature enacted section 828 of the Executive Law, barring any lordlord from interfering with the installation of cable television facilities on their premises and from demanding any compensation for permitting installation and service other than that set by the State Commission on Cable Television. The Commission has established $1 as the general fee to which all landlords will be entitled.
The majority concludes that the imposition upon landlords constitutes a valid exercise of the State’s police power because it furthers development of cable television “as a communications and educational medium” and regulates the tenant-landlord relationship. In addition, the majority cites the “minimal nature” of the physical invasion of the landlord’s properties (at p 155). If this case involved merely a limitation of the uses to which a landlord could put a building, the majority’s analysis might be appropriate. What is involved here, however, is a State-authorized physical appropriation of a portion of the landlord’s property for the use of the cable television corporation. Such appropriations have long been considered clear cases of compensable takings, and courts have not resorted to the various balancing tests applied to State regulation under the police power. As will be shown, this court in the past has recognized the distinction between the two concepts — a distinction the majority now blurs.
*157 The just principle that a taking of a person’s property for the use of the public must be fairly reimbursed has deep roots in our legal tradition. Indeed, the drafters of the Bill of Rights included in the Fifth Amendment the injunction “nor shall private property be taken for public use, without just compensation.” As this Nation’s economy grew in the early 19th century, the power of eminent domain became a widely used tool to spur growth through construction of turnpikes, railroads, canals and other industrial and commercial ventures that were viewed by legislatures as beneficial to society. As a counterweight to this power, by the middle of that century the bulk of the States had added clauses to their own Constitutions to require that such takings be justly compensated (see Horwitz, Transformation of American Law, pp 63-66).
During the same period there arose the separate concept of the State’s police power imposing restraints upon the use of property, when that use might conflict with the health, safety, or other important interests of society. This power, as articulated in 1851 by Chief Justice Shaw of Massachusetts, was based on the principle that “every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated, that it shall not be injurious * * * to the rights of the community” (Commonwealth v Alger, 7 Cush [61 Mass] 53, 84-85). But Shaw was careful to note that this regulation under the police power, which did not require compensation, “is very different from the right of eminent domain, the right of a government to take and appropriate private property to public use, whenever the public exigency- requires it” (Commonwealth v Alger, 7 Cush [61 Mass] 53, 85, supra).
Although this distinction was theoretically tidy, it became apparent with the growth of government regulation that private property could be so heavily regulated as to lose all practical value to its owner. The Supreme Court, applying the Fifth Amendment “taking clause” to the States through the Fourteenth Amendment, recognized that “while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking” (Pennsylvania Coal Co. v Mahon, 260 US 393, 415, *158 [Holmes, J.]). Because courts often refer to instances of excessive regulation as takings, as the Supreme Court did in Mahon, the difference between regulation under the police power and taking, in the sense of appropriation, of property under the eminent domain power is sometimes misunderstood.
What Mahon and the subsequent police power regulation cases have done is to create a right to compensation in addition to that already existing for the outright appropriation of private property. It is true that the courts over the years have been able to create “no set formula to determine where regulation ends and taking begins” (Goldblatt v Hempstead, 369 US 590, 594). The constantly changing nature of government regulation in a modern society and the myriad factual situations in which regulation can arise doom attempts to find simple answers.[1] The courts have instead generally made “essentially ad hoc” determinations, with emphasis given to a variety of factors (Penn Cent. Transp. Co. v New York City, 438 US 104, 124, affg 42 NY2d 324; see, e.g., Goldblatt v Hempstead, 369 US 590, supra; United States v Central Eureka Min. Co., 357 US 155; Spears v Berle, 48 NY2d 254; French Investing Co. v City of New York, 39 NY2d 587).
Whatever difficulties courts have encountered in formulating a standard for determining when regulation, under *159 the police power is the equivalent of a taking, however, there has been no doubt whatever that the physical appropriation itself of property for public use — the traditional form of a taking — continues to require compensation. Only four years ago, this court discussed at length the separate natures of a traditional physical taking of property and unconstitutionally excessive regulation limiting the use of property, and the different analysis each required (French Investing Co. v City of New York, 39 NY2d 587, 593-597, supra; see, also, Spears v Berle, 48 NY2d 254, 262, supra; New York Tel. Co. v Town of North Hempstead, 41 NY2d 691, 696-697).[2]
By analyzing as an exercise of the State’s police power what is in reality a clear example of a taking in the traditional sense of a physical appropriation, the majority has removed an important barrier to uncompensated takings of *160 private property. An owner who challenges the regulation of property under the police power “must sustain a heavy burden of proof, demonstrating that under no permissible use would the parcel as a whole be capable of producing a reasonable return or be adaptable to other suitable private use” (Spears v Berle, 48 NY2d 254, 263, supra). Yet where an actual appropriation of private property for public use is concerned, the taking of even a minimal amount of property will entitle the owner to compensation. “The modern significance of physical occupation is that courts, while they sometimes do "hold nontrespassory injuries compensable, never deny compensation for a physical takeover. The one incontestable case for compensation (short of formal expropriation) seems to occur when the government deliberately brings it about that its agents, or the public at large, ‘regularly’ use, or ‘permanently’ occupy, space or a thing which theretofore was understood to be under private ownership. This may be true although the invasion is practically trifling from the owner’s point of view” (Michelman, Property, Utility, and Fairness: Comments on the Ethical Foundations of “Just Compensation” Law, 80 Harv L Rev 1165, 1184-1185 [emphasis in original]). Thus, for instance, this court has held the owner entitled to compensation where the State takes a roadway that was mapped but never constructed (City of Albany v State of New York, 28 NY2d 352) or where a gas main is placed in land already covered by a public road (Heyert v Orange & Rockland Utilities, 17 NY2d 352).
The majority in effect reasons that because excessive and improper regulation under the police power is sometimes termed a de facto taking, police power analysis can therefore be applied to all takings, even those clearly falling into the traditional public appropriation category. This turns the de facto taking concept, originally an expansion of the traditional protection of the right to compensation, into a tool to sharply curtail that right.
Here the cable television company has run its cables across the roof and down the front of the building and into the building, without the owner’s authorization. It seeks to assert what is, in effect, an easement in gross (see Antono *161 pulos v Postal Tel. Cable Co., 261 App Div 564, affd 287 NY 712; cf. Real Property Law, § 261). Eminent domain proceedings, with appropriate compensation, have traditionally been the method of acquiring rights of way for telegraph, telephone, electric and other utility lines over or through private property when voluntary agreements cannot be reached (see Transporation Corporations Law, art 3; see, generally, 26 AM Jur 2d, Eminent Domain, § 58, pp 714-715). The majority offers no rationale that justifies treating cable television corporations differently than telephone companies, power suppliers and other utilities. Certainly these other corporations provide services that are just as necessary and beneficial to society, if not more so. Indeed, it is for such purposes that the eminent domain power itself is intended to be employed. If mere social utility can provide a basis under the police power for infringement of private property rights such as the majority would countenance here, there is no reason why this concept should not be extended to also permit telephone companies to place poles across a person’s front yard or a gas company to bury its lines under it without any requirement for fair compensation.
The anomalous nature of the majority’s position is highlighted by comparison with New York Tel. Co. v Town of North Hempstead, (supra). In that case, the town placed light fixtures on the utility’s poles without the company’s permission. This court unanimously held that this was “a clear instance of a taking of private property for the use of the municipality” (41 NY2d 691, 697, supra).[3] The majority attempts to distinguish New York Tel. by noting that it involved direct placement of lights on the utility poles by the town, while in this case the government merely authorized action by a private corporation. The Supreme Court, however, has not hesitated to find a taking where private parties acted under government authorization. In Delaware, Lackawanna & Western R. R. Co. v Town of Morristown (276 US 182), for instance, the court held that a *162 regulation requiring the railroad to provide space on its grounds for private taxicabs was an unconstitutional taking (see, also, Pumpelly v Green Bay Co., 13 Wall [80 US] 166). Under the principles of eminent domain, the mere fact that the Legislature has authorized a private corporation to take property for a public purpose, rather than the government taking property itself, does not wipe out the property owner’s right to just compensation (see 26 Am Jur 2d, Eminent Domain, § 20, pp 663-665). There is no reason whatever that the property owner should be foreclosed from fair compensation here.
The requirement of just compensation where private property is appropriated for a public use has long been recognized by this and other courts. It is a concept distinct from that of a de facto taking, which provides a limit to uncompensated police power regulation, not a cutback on the requirement for compensation for physical appropriation. The majority simply fails to recognize this distinction. In treating the clear physical appropriation of the landlord’s property as an exercise of the police power, the majority wipes out an important protection against improper government encroachment on private property rights.
This case involves a clear instance of a taking requiring just compensation, yet the payments here fall far short of what is required both by constitutional standards and by fundamental principles of condemnation law. The regulations of the Commission provide that a landlord may apply for a reasonable fee for allowing installation of cable television equipment, and the Commission will pass upon the landlord’s application (9 NYCRR 598.2, 598.7). That same Commission, however, has already declared that the reasonable fee, “absent a special showing of greater damages attributable to the taking, is a payment of a one-time, $1.00 fee” (State Commission on Cable Television, Clarification of General Policy, Aug. 27, 1976, p 4). Thus, what constitutes a reasonable fee is established by administrative fiat rather than by judicial hearing. This blanket declaration cannot realistically be seen as providing a fair assessment of the damage that an apartment building owner has suffered through the installation of cables and transmission *163 equipment. The folly of the enacted scheme is apparent not only from the obvious gross inadequacy of the token dollar payment but also from the uniformity of the dollar payment regardless of the extent of the taking from different property owners.
And it cannot be suggested that the owner wait until some future time, when construction or other form of development, even by a subsequent owner, has rendered the cables and equipment a serious actual impediment, before seeking compensation. It is a long-accepted principle that an owner is entitled to compensation for the value of the property at the time of the taking (see, e.g., 4 Nichols, Eminent Domain, § 12.23, p 12-117).
Finally, it should be noted that the instant method of determining compensation comports with the procedural requirements of neither the former Condemnation Law, in effect when this action began, nor the superseding Eminent Domain Procedure Law.[4]
For these reasons, I must dissent and vote to reverse.
Judges Jasen, Jones, Wachtler and Fuchsberg concur with Judge Meyer; Judge Gabrielli concurs in a separate opinion; Chief Judge Cooke dissents and votes to reverse in another opinion.
Order affirmed.

. Scholars have also struggled to construct theoretical models for guidance in deciding such cases. Professor Sax framed the question as whether the government in its regulation was acting in its entrepreneurial capacity or merely arbitrating between private factions. He observed that “the acquisition of title or the taking of physical possession will be present in the great majority of taking cases under this theory. But — and this is the important point — the presence or absence of a formal title-acquisition and/or invasion will never be conclusive. These formalities are not necessarily present when the government, as an enterpriser, is acquiring resources for its own account” (Sax, Takings and the Police Power, 74 Yale LJ 36, 67). He has since expressed the view that the question was “considerably more complex” than his original formulation took into account (Sax, Takings, Private Property and Public Rights, 81 Yale LJ 149, 150, n 5). Another thorough discussion of the limits of police power regulation of property was offered by Professor Michelman (Michelman, Property, Utility, and Fairness: Comments on the Ethical Foundations of “Just Compensation” Law, 80 Harv L Rev 1165). These discussions focus on the hard-to-define boundary between valid police power regulation and de facto takings, however, not on cases of clear appropriation of property for public use as is involved here.

. People ex rel. Durham Realty Corp. v La Fetra (230 NY 429, app dsmd 257 US 665) and People ex rel. Rayland Realty Co. v Fagan (194 App Div 185, affd 230 NY 653), cited by the majority, do not stand for the proposition that property can be taken for public use without compensation. The court upheld statutes preventing landlords for two years from summarily evicting tenants upon the expiration of their leases and limiting rent to a reasonable amount. There was no appropriation of any portion of the landlords’ buildings. The court held that to the extent the police power regulations limited landlords’ power to evict existing tenants, compensation in the form of reasonable rent was provided. The rent control cases involved government regulations that only impaired the property interests of landlords in obtaining as much rent as possible for their apartments and in summarily evicting those tenants unwilling to pay the increased rents. There was no restriction of the landlords’ power to choose among prospective new tenants. Such regulation is similar to environmental or zoning regulations that limit the profitability of an owner’s property. It is qualitatively different from government action setting aside a portion of the landlords’ property for a public use.
Likewise, PruneYard Shopping Center v Robins (447 US 74) is not apposite. That case involved State restrictions of a shopping center’s power to limit the exercise of free speech and petition rights by some members of the public, where the general public was invited to the center. The Supreme Court found that this restriction did not rise to the level of a taking, as contrasted with the situation presented in Kaiser Aetna v United States (444 US 164).
In reaching this conclusion the Supreme Court weighed factors, such as interference with investment-backed expectations, that are appropriate for determining whether government regulation constitutes a de facto taking. Unlike PruneYard, the instant case involves more than a limitation on a property owner’s right to exclude certain members of the public. It involves the physical appropriation of portions of the owner’s building for the installation of equipment and cables. This is what makes it a taking of the traditional type. It should also be noted that the free speech and petition interests of the public that were protected by the State regulation in PruneYard do not exist here.

. Although the court found the installation of the light fixtures to be an appropriation of private property falling outside the valid scope of the police power, it also held that the taking involved personal property and that the town’s eminent domain power extended only to real property.

. Although the new Eminent Domain Procedure Law had not yet taken effect when the complaint was filed, the statement of purpose contained in that revision states principles that are nonetheless apt here: “[i]t is the purpose of this law to provide the exclusive procedure by which property shall be acquired by exercise of the power of eminent domain in New York state; to assure that just compensation shall be paid to those persons whose property rights are acquired by the exercise of the power of eminent domain; * * * to encourage settlement of claims for just compensation and expedite payments to property owners; to establish rules to reduce litigation, and to ensure equal treatment to all property owners” (EDPL 101; see, also, former Condemnation Law, § 3).