HONORE DE ST. AUBIN et al., Respondents, v ROBERT F. FLACKE, as Commissioner of Environmental Conservation of the State of New York, Appellant.

Second Department, August 5, 1985

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General* (*John G. Proudfit* of counsel), for appellant.

*Lapp & Bradie* (*Michael Bradie* of counsel), for respondents.

## OPINION OF THE COURT

Per Curiam.

The issue presented on this appeal is whether petitioners have established that the denial of permits to fill their respective parcels of tidal wetland has destroyed the economic value of their properties or all but a bare residue of that value.

Petitioners are the owners of contiguous vacant parcels of land located in Lido Beach in the Town of Hempstead. The properties, aggregating 103.5 acres, lie between Lido Boulevard to the south and Reynolds Channel to the north. Pursuant to the Tidal Wetlands Act (ECL art 25), most of this land, specifically 81.3 acres, has been designated by the appellant Commissioner of Environmental Conservation as tidal wetlands (ECL 25-0201); the remaining 22.2 acres have been classified as uplands. At one time, this tract of land was divided into essentially three different parcels; at present it is divided into four parcels. Ownership has also changed over the years but, for purposes of this appeal, it is sufficient to note that applications for rezoning and developmental permits have always concerned the entire tract.

The properties are zoned Residence B which would permit construction of single-family homes on 6,000 square foot plots. In the late 1960's, petitioner Valley Stream Terrace Corp. filled a portion of its property on the north side of Lido Boulevard and developed a single-family residential subdivision known as Lynwood at Lido. In 1972, applications were made to the Hempstead Town Board for a rezoning of the properties comprising the tract to Residence C-A, permitting multifamily units. In connection with these applications, an offer was made to dedicate to the town a strip of marshland, fronting on Reynolds Channel, which would be retained in its natural state. The rezoning requests were denied.

In 1973, before the effective date of the Tidal Wetlands Act but after its passage, petitioners Valley Stream Terrace Corp., Lyons and the estate of de St. Aubin all placed some fill on the upland portions of their respective properties. Effective September 1, 1973, any form of dredging, filling or construction within or immediately adjacent to inventoried wetlands was prohibited without a permit (ECL 25-0401 [1], [2]). Pending completion of the inventory of all tidal wetlands in the State, a moratorium was declared on wetland alteration, although landowners could seek relief upon a showing of hardship (ECL 25-0202). In October and November 1973, applications were made for hardship permits to place 1,300,000 cubic yards of fill on the entire 103.5

acre tract with the intention that thereafter a total of 607 single-family homes would be constructed. The applications were denied in March 1974, after a public hearing, on the ground that any filling of the marsh areas would cause irreparable damage and be contrary to the policy and provisions of the Tidal Wetlands Act to preserve as much as possible of the remaining wetlands in this State in their natural condition consistent with reasonable economic and social development. The denial was without prejudice to the filing of new applications for development of the upland portions of the properties. Shortly after denial of the moratorium permit applications, an action was commenced in the Supreme Court for a judgment declaring the Tidal Wetlands Act unconstitutional as applied to the properties comprising the tract, upon the ground that it deprived the owners of all reasonable use and enjoyment of those properties without just compensation (*see, de St. Aubin v Biggane,* 51 AD2d 1054). Claims were also filed in the Court of Claims. All of those matters are still technically pending. Finally, tax certiorari proceedings were commenced which resulted in a substantial reduction in the real property taxes on the parcels comprising the tract (*see,* ECL 25-0302 [2]).

In 1979, petitioners estate of de St. Aubin and Lyons filed permit applications seeking to develop their properties in substantially the same manner proposed in their 1973 applications. In 1980, petitioners Valley Stream Terrace Corp., Thurlow and Nominee Realty Corp. made a similar permit application. In the period between 1973 and 1980 the Department of Environmental Conservation had completed its inventory and most of the properties comprising the tract were classified in such a way as to render construction thereon of residential housing a presumptively incompatible use. Construction of housing on the upland portions is permissible, subject to various setback, lot size and other restrictions (6 NYCRR 661.5, 661.6). At the hearing on their applications, the petitioners agreed that there had been no substantial change in the character of these wetlands since 1973 and did not contest the findings and conclusions underlying the 1974 denial of the prior permit applications. They presented no witnesses or other evidence and, predictably, on February 10, 1981, the appellant denied their applications without prejudice to the filing of new or amended applications for development of the upland portions of the parcels.

Thereafter, petitioners commenced the instant CPLR article 78 proceeding to review the appellant's 1981 determination. Pursuant to the two-stage review process contemplated by ECL 25-0404 (*see, Spears v Berle,* 48 NY2d 254, 263), Special Term

(Lockman, J.), upheld the denial of the permits sought by petitioners and directed a hearing to determine whether the provisions of the Tidal Wetlands Act, as applied to petitioners' properties, constituted an unconstitutional taking. Upon the hearing, which truly rivaled a full-blown condemnation trial in its scope, it became clear that the parties were very close on their valuation of the parcels without regard to the development strictures of the Tidal Wetlands Act. The main difference between them was whether or not to deduct the cost of bulkheading along Reynolds Channel from the acreage valuation based on comparable sales. Petitioners' appraiser, William L. Edwards, did not include this expense as a development cost on the theory that it would be entirely recouped from the sale of premium priced waterfront lots. Appellant's appraiser, Robert Von Ancken, believed bulkhead costs were properly part of average development costs and should be deducted from raw acreage values. Special Term (Murphy, J.), found petitioners' approach to be the proper one and their appraisal to be the more credible, a finding amply supported by the record; significantly, if the cost of bulkheading is added to appellant's raw acreage values, the result is a "before value" for each parcel which is concededly very close to petitioners' "before value" for those parcels.[1]

There was, however, much less agreement on the properties' "after values". While both sides agreed that development of the uplands was possible, and their single-family lot values were only approximately $5,000 apart before deduction for engineering costs, they vehemently disputed the form such development would take. Essentially, petitioners took the position that upland development had to conform with all of the existing provisions of the Town of Hempstead zoning ordinance, the subdivision regulations of the Nassau County Planning Commission, the present ECL article 25 line (denominating the wetland boundary), and the regulations promulgated pursuant to the Tidal Wetlands Act. On the other hand, appellant's appraiser specifically premised his "after value" on the assumption that variances would be granted from town zoning requirements so as to allow multifamily and/or cluster housing on the

---

1. Petitioners' before values and the appellant's revised before values, including the cost of bulkheading, are as follows:

| Parcel | Petitioners | Appellant |
|---|---|---|
| A | $ 720,000 | $ 732,267 |
| B | $ 900,000 | $ 648,101 |
| C | $1,345,000 | $1,316,793 |
| D | $1,965,000 | $2,192,526 |

upland parcels. The testimony indicated that appellant would vary the ECL article 25 line and the wetland regulations to some extent to allow denser development. Thus, the crucial issue was yield and the question of whether there existed a reasonable probability of rezoning was squarely posed.

Petitioners proffered a subdivision map of their uplands which conformed to all local zoning and subdivision requirements and to State wetlands regulations prescribing a minimum plot size of 20,000 square feet and a 75-foot setback from tidal wetlands (6 NYCRR 661.6). On their approximately 22 upland acres, petitioners arrived at a yield of 29 building lots. Appellant's proposal for upland development was couched in the form of a letter and map sent to petitioners' attorney just prior to the hearing. This submission satisfied the State's obligation to provide petitioners with reasonable notice of the uses appellant would permit (*Spears v Berle, supra,* at p 263, n 4). Basically, appellant proposed to increase the yield by regularizing the ECL article 25 line denominating the edge of the wetlands, which would, in turn, affect the setback line, and allow two-family and/or cluster development. The result was a yield of 52 lots with 104 residential units.

■ On the issue of multifamily housing, it was undisputed that there had been only one change of zone to multifamily use in Lido Beach in over 20 years. That rezoning, granted in 1957, resulted in construction of a 224-unit condominium known as the Lido Town House. Located on the south side of Lido Boulevard amid beach clubs, that property had originally been zoned for business use. Three applications for rezoning to a multifamily use were denied in the early 1960's, covering both sides of Lido Boulevard, and applications by petitioners Lyons and the estate of de St. Aubin for multifamily zoning were denied in 1972. Appellant's appraiser also admitted that he knew of no changes of zone to two-family use in Lido Beach or of any existing two-family uses. On this record, then, Special Term properly found that appellant had failed to establish a reasonable probability of a change of zone to two-family homes.

■ On the issue of cluster zoning, the evidence established that there were no cluster developments in Lido Beach and that since amendment of the cluster ordinance in 1979, only one application for cluster zoning had been made and granted in the Town of Hempstead, being a development known as Pebble Cove in the Incorporated Village of Atlantic Beach, five miles away from the subject tract. The developer there planned to construct two-story, one-family condominiums on approximately 3 out of

12 acres which fronted on the ocean and would have a beach as part of the common area. There was also a very real question raised as to whether petitioners' uplands even qualified for cluster zoning under the ordinance. Special Term found that appellant had failed to establish a reasonable probability of rezoning for cluster use and, on the evidence adduced, that finding cannot be faulted.

■ Finally, even operating solely on the assumption that the existing one-family use zoning would control, appellant posited an upland yield of 52 lots with one unit per lot, to petitioners' yield of 29 lots with one unit per lot. While it may well be that petitioners' plan layout was somewhat conservative, appellant's proposal failed to comply with the subdivision regulations of the Nassau County Planning Commission and, according to the Commission's Assistant Deputy Director in charge of subdivision control, compliance would require a substantial reduction in the number of lots proposed. Hence, we cannot conclude that Special Term erred in accepting petitioners' "after value" figures. Nor, after comparing their before and after values, did it err in finding that petitioners met their burden of establishing a taking of their properties without compensation.[2]

■ Two additional arguments raised by appellant merit comment. First, we do not agree that petitioners were under an obligation to make an attempt at developing their uplands in accordance with appellant's proposal. Rather, petitioners' obligation was to present "dollars and cents" evidence demonstrating that under no permissible use would the parcel as a whole be capable of producing a reasonable return, i.e., that application of the wetlands restrictions destroyed the properties' economic value or all but a bare residue of that value (*Spears v Berle,* 48 NY2d 254, 263, *supra*). In this context, appellant's proposal serves simply to notify petitioners of the permissible uses the appellant contends will yield them a reasonable economic return

---

**2.** Petitioners' before and after values established the following percentage loss of value:

| Parcel | Before Value | After Value | % Loss of Value |
|--------|--------------|-------------|-----------------|
| A | $   720,000 | $   27,000 | 96.25% |
| B | $   900,000 | $ 160,000 | 82.23% |
| C | $1,345,000 | $ 155,000 | 88.48% |
| D | $1,965,000 | $ 275,000 | 86.01% |

See *Chase Manhattan Bank v State of New York* (103 AD2d 211, 223-224), where this court found proof of a reduction in value of approximately 86% satisfied the claimant's burden of proving that a constitutional challenge to the Tidal Wetlands Act, as applied, would have at least a reasonable probability of success in court.

and which they must negative in order to prevail. Further, while we believe that, in making their appraisal, petitioners were required to carefully gauge the effect of any proposed variance from wetlands regulations which appellant was willing to grant, including minor changes in the ECL article 25 line, they were free to challenge any aspect of appellant's appraisal which required a variance from, or change in, local zoning restrictions as not reasonably attainable. In other words, a use which violates local zoning restrictions and has no reasonable prospect of being approved by local authorities is not a "permissible use". Hence, any economic return which might otherwise flow from such a use, as proposed by appellant, is totally irrelevant (*see, Chase Manhattan Bank v State of New York*, 103 AD2d 211, 220-221). Finally, since appellant's proposal will typically be formulated and communicated to a petitioner just prior to or during the permit denial review proceeding for which it has been prepared, it is inconceivable that such petitioner would then be expected to seek an adjournment and actually pursue any local variance or rezoning proceeding suggested by appellant.

Second, appellant incorrectly argues that petitioners Thurlow and Nominee Realty Corp. are barred from making any claim of confiscation because they purchased their parcels after the effective date of the Tidal Wetlands Act. As stated by the Court of Appeals in *Vernon Park Realty v City of Mount Vernon* (307 NY 493, 500), "[p]urchase of property with knowledge of the restriction does not bar the purchaser from testing the validity of the zoning ordinance since the zoning ordinance in the very nature of things has reference to land rather than to owner * * * Knowledge of the owner cannot validate an otherwise invalid ordinance." Since no showing of hardship is necessary to secure a wetlands permit or challenge its denial as confiscatory, contrary to the case of zoning variances, petitioners Thurlow and Nominee Realty may properly pursue their claims of an unconstitutional taking (*see also, Matter of Lemp v Town Bd.*, 90 Misc 2d 360).

Accordingly, the judgment appealed from should be affirmed.

MANGANO, J. P., BROWN, O'CONNOR and WEINSTEIN, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered April 11, 1983, affirmed, with costs.