OPINION OF THE COURT
Simons, J.
Petitioners own 103 acres of real property contained in four contiguous parcels located in the Town of Hempstead. Because part of the land has been classified as tidal wetlands, respondent Commissioner of Environmental Conservation has denied them a permit to fill in the wetland portion and develop the acreage into 607 single-family residences. Accordingly, they instituted this proceeding pursuant to ECL 25-0404 to review respondent’s denial of their application or, alternatively, if the court found respondent’s action proper, to obtain a declaration that regulation of the properties constitutes a taking without just compensation in violation of the Federal and State Constitutions (US Const 5th Amend; NY Const, art I, § 7). Special Term upheld respondent’s denial of the application but con- *70 eluded that petitioners had proven a taking. It ordered respondent to either grant petitioners’ requested application or commence proceedings to condemn the wetlands portions of their properties. The Appellate Division affirmed (see, 109 AD2d 481) and the matter is now before us by our leave.
I
The Tidal Wetlands Act was enacted in 1973. It was designed to "preserve and protect tidal wetlands, and to prevent their despoliation and destruction, giving due consideration to the reasonable economic and social development of this state” (ECL 25-0102). The legislative findings state that tidal wetlands constitute "one of the most vital and productive areas of our natural world” and that their "protection and preservation” are held to be "essential” (L 1973, ch 790, § 1). Thus, the act provides that properties designated by the Commissioner of Environmental Conservation as tidal wetlands of the State (ECL 25-0201), just as those designated freshwater wetlands (ECL 24-0301 et seq.), are subject to "rigorous regulation” (cf. Spears v Berle, 48 NY2d 254, 260). Any form of dredging or filling, or the erection of any structures within or immediately adjacent to inventoried wetlands which may substantially impair or alter their natural condition, is prohibited without a permit (ECL 25-0401 [1], [2]) and to obtain a permit, an applicant must demonstrate that the proposed activity will be "in complete accord with the policy and provisions” of the act (ECL 25-0402 [1]).
Since wetlands restrictions are far more stringent than most other regulations — restricting development per se — the Legislature has provided property owners with a unique remedy against an unconstitutional taking within the context of the regulatory scheme itself. Thus, if a permit is denied or the permit offered is more limited in scope than that sought, the owner may seek judicial review of the administrative denial in a two-step proceeding. If the court finds that the permit denial is supported by substantial evidence, then a second determination is made in the same proceeding to determine whether the restriction constitutes an unconstitutional taking requiring compensation. The taking determination is made on the basis of a full evidentiary hearing and if the landowner prevails the Commissioner is directed, at his option, to either grant the requested permit or institute condemnation proceedings (ECL 25-0404; cf. Spears v Berle, supra, at p 261).
*71 This appeal involves a judicial determination made under this statutory procedure and requires resolution of three issues: first, whether petitioners’ claims, instituted before petitioners had sought and been denied a variance or rezoning of the properties by the Hempstead Town Board, are ripe for judicial review; second, if they are, did the courts below err in placing the burden on respondent to prove that there existed a reasonable probability that petitioners could obtain a rezoning of the subject parcels; and third, if petitioners had that burden, does the evidence in the record support their claim.
 There should be a reversal. Although the matter is ripe for review, the courts below erroneously shifted to respondent the burden of proving that there was a reasonable probability of rezoning and thus required him to prove that the property could be economically developed.
II
Petitioners’ properties are located in the community of Lido Beach between Lido Boulevard on the south and Reynolds Channel on the north. Respondent has designated 81 acres of it bordering the channel as tidal wetlands and the remaining 22 acres as uplands. Under the restrictions on development found in the act and applicable regulations, a permit is required for construction of single or multifamily dwellings on either wetlands or uplands (see, ECL 25-0401 — 25-0403; 6 NYCRR 661.5-661.11). There is this difference, however; development is a presumptively incompatible use for wetlands while it is classified as a generally compatible use for uplands (6 NYCRR 661.5 [a], [b]; ECL 25-0401). Once a permit is granted other restrictions apply. The most significant of these are the requirements that lots must have a minimum area of 20,000 square feet and that there must be a 75-foot setback from the edge of the wetlands to a principal dwelling (6 NYCRR 661.6 [a] [1], [5]). Cluster zoning is specifically provided for, however, and respondent may also grant variances from these restrictions (see, 6 NYCRR 661.6 [a] [6]; 661.13).
In addition to the restrictions imposed under the authority of the Environmental Conservation Law, the Town of Hemp-stead has zoned petitioners’ properties as Residence B, a classification permitting only single-family dwellings on lots having a minimum size of 6,000 square feet. In 1972, before enactment of the Tidal Wetlands Act, petitioners applied to *72 the Town Board to rezone the entire tract to multifamily development. The applications were denied.
The Tidal Wetlands Act became effective on September 1, 1973 and petitioners’ properties were tentatively designated as wetlands and were, therefore, subject to the act’s moratorium on development while all such lands were inventoried and final boundaries drawn (see, ECL 25-0201 — 25-0202). In October and November 1973, petitioners applied to respondent for hardship permits seeking permission to fill the entire 103 acres for the purpose of constructing single-family dwellings in compliance with the Town zoning regulations (see, ECL 25-0202 [2]). The applications were denied without prejudice to the filing of new applications for development of the upland portions of the tract.
Following completion of the inventory proceedings, respondent finally designated petitioners’ parcels as wetlands. In 1979 and 1980, petitioners reapplied for permits seeking essentially the same development they had requested in 1973. At the public hearing, they conceded that there had been no substantial change in the wetlands since 1973, they did not contest the basis of the 1974 denial of the similar request and they presented no witnesses or other evidence in support of the applications. Predictably, their applications were denied, once again without prejudice to the submission of new applications to develop the upland portions of the properties. Instead, petitioners commenced this proceeding.
Special Term found that respondent’s denial was supported by substantial evidence and set the matter down for trial on petitioners’ taking claim. Approximately nine months before trial, respondent submitted to petitioners’ counsel, in compliance with our decision in Spears v Berle (48 NY2d 254, 263, n 4, supra), a letter and accompanying map outlining the uses of the upland properties that he would permit. He proposed two alternative methods of development. The first recommended division of the uplands into 52 lots each containing 20,000 square feet. Although some of the lots bordering on the wetlands boundary contained wetlands within them, the proposal retained the 75-foot setback for each principal dwelling from the wetlands boundary in accordance with the regulations (see, 6 NYCRR 661.6 [a] [1]) but proposed that each lot could be occupied by a two-family duplex or condominium, the type of housing included under the definition of "principal building” in the wetland regulations (see, 6 NYCRR 661.4 [z]). *73 Second, respondent stated that cluster development of the uplands, apparently using the wetlands as the open space, would be permitted (see, 6 NYCRR 661.6 [a] [6]; cf. Matter of Friends of Shawangunks v Knowlton, 64 NY2d 387).
At the taking trial, the parties’ appraisers were in substantial agreement on the value of the properties without the wetlands restrictions. They differed on their "after values”, however, agreeing that the upland area could be developed but disagreeing on the form that development could take. Petitioners’ appraiser premised his after value on strict compliance with the existing requirements of both the local zoning ordinance and the wetland regulations without considering the possibility of any variances or changes in them. Based upon this, he concluded that the uplands could be developed into 29 single-family dwellings sited on lots of 20,000 square feet. Respondent’s appraiser based his "after value” on respondent’s January 1982 letter proposal, assuming that petitioners could obtain changes in zoning to allow multifamily or cluster development on the uplands parcels. According to respondent’s appraiser this would yield at least 52 building lots with 104 residential units.
The key to determining after value was the effect of the Town zoning on the property. On this issue, it was undisputed that the only change to multifamily use in Lido Beach occurred in 1957 and involved a parcel near petitioners’ properties subsequently developed into a 224-unit condominium. Three other applications to rezone from Residence B (single family) to Residence C-A (multifamily) along Lido Boulevard had been denied in the 1960’s and, as noted, the applications of petitioners Lyons and the estate of de St. Aubin for the same relief had been denied in 1972. Requests to rezone for cluster development had fared much better, however; the only such application since an amendment of the ordinance in 1979 had been granted, and resulted in the construction of condominiums in Atlantic Beach, five miles from petitioners’ properties.
Special Term placed the burden of resolving the zoning issue on respondent and finding that he had failed to establish the underlying assumption of his appraisal report, that there was a reasonable probability of a variance or rezoning of the properties to liberalize the restrictions of the local zoning ordinance, it rejected the after values in his appraisal and accepted the after values in petitioners’ appraisal which dem *74 onstrated a percentage loss in value for each parcel ranging from 86.01% to 96.25%. On this evidence, the court concluded that respondent’s determination affected a taking of petitioners’ property without just compensation and ordered respondent to either vacate his denial of the permit application and permit petitioners to fill and develop the entire 103 acres of land or commence condemnation proceedings to acquire the wetlands portion of the property within 60 days. The Appellate Division affirmed for substantially the same reasons.
ra
The core of the problem is that development of the property is regulated by two separate branches of government, the State, implementing the Tidal Wetlands Act, and the Town, which regulates the use of the land under its zoning powers. Each government’s regulations are both more and less restrictive than the other. Thus, the State has placed a greater premium on open space, requiring 20,000 square-foot lots, but permitted multiple or cluster zoning, while the Town permits smaller building lots, 6,000 square feet, but restricts building to single-family residences. Conceivably, the two schemes could be harmonized, even without rezoning, by building one single-family residence on each 6,000 square-foot lot in a clustering arrangement but respondent has not argued the point. Instead, he contends that in this action petitioners attack only the State’s regulations and that those regulations do not foreclose the economic use of the property. Petitioners rest on the restrictive literal language of both State and Town regulations and claim they are afflicted by the worst of both worlds.
A.
We turn first to the ripeness issue.
Respondent relies on Williamson County Planning Commn. v Hamilton Bank (473 US 172) and similar cases and contends that until petitioners seek a variance or rezoning of the properties from the Town either granting or denying permission to develop the properties for uses he will permit, i.e., multifamily or cluster development, it is impossible to ascertain whether they can obtain a reasonable return on their land despite the wetlands restrictions. Petitioners contend that in light of the past denials of such requests, including the 1972 requests involving these same *75 parcels, it would be futile to require them to request a zoning change from the Hempstead Town Board. We agree with petitioners that their taking claim is ripe for review but not with their reasoning.
The doctrine of ripeness is intended to avoid premature adjudication or review of administrative action. It rests upon the idea that courts should not decide the economic impact of regulation until the full extent of the regulation has been finally fixed and the amount of damage caused by it is measurable. Until the agency has formalized its decision and its impact is felt in a concrete way, the courts should avoid becoming entangled in abstract or hypothetical problems or interfering with administrative policies (see, MacDonald, Sommer & Frates v Yolo County, 477 US —, 91L Ed 2d 285,294-296). In Williamson, the Supreme Court held that a taking claim was not ripe for review until the county agencies charged with implementing land development regulations had reached a final decision on the application of the regulations to the property at issue. We recently applied that decision in Church of St. Paul & St. Andrew v Barwick (67 NY2d 510), a case involving the New York City Landmark Commission. In both Williamson and Church of St. Paul & St. Andrew, however, the agency or branch of government regulating the property was before the court. In this case two independent regulatory bodies, one local and one State, have concurrent jurisdiction over the manner in which petitioners’ properties may be developed. The landowner must accommodate the interests of both but only one of them is before the court.
There were two agencies involved in the Williamson case, the Planning Board and the Zoning Board, and the Supreme Court held that the proceeding was not ripe for review. Its decision did not purport to require a landowner to apply for administrative relief from one regulating body before presenting a taking claim against another, however, and it may be significant that in Williamson both regulators were agencies of the county government. That ruling should not be extended to prevent determination of this case. Conceivably, there are agencies other than the Zoning Board also interested in development of this land, such as a Town or County Planning Board, and to require the landowners to seek relief from one or more regulators in different branches of government as a necessary precondition to bringing suit against the Commissioner on a taking claim could create a bureaucratic night *76 mare (see, MacDonald, Sommer & Frates v Yolo County, 477 US —, 91 L Ed 2d 285, 295, n 7, supra; see, e.g., Town of Lima v Harper, 55 AD2d 405, affd 43 NY2d 980). Respondent’s decision, inasmuch as he does not fault petitioners for not seeking a variance of the State regulations, is final and it may be reviewed.
The problem, of course, is that petitioners control the success of their taking claim by the simple expedient of resting on the literal language of the zoning ordinance when an application for relief might readily be granted by the Town. That danger can be avoided by requiring the petitioner to prove that relief from the zoning restriction is not reasonably to be expected.
B.
A landowner who claims that land regulation has effected a taking of his property bears the heavy burden of overcoming the presumption of constitutionality that attaches to the regulation and of proving every element of his claim beyond a reasonable doubt (see, Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 500; Spears v Berle, 48 NY2d 254, 263, supra; McGowan v Cohalan, 41 NY2d 434, 436; Matter of National Merritt v Weist, 41 NY2d 438, 445). That burden remains upon him throughout the case and never shifts to the State. Only when the landowner establishes a prima facie case by presenting evidence of sufficient "quality and weight” to permit the trier of fact to decide in his favor does the State have any burden at all and then it has only a practical burden of going forward with evidence in rebuttal or risk an adverse determination by the trier of fact rather than a legal obligation that is essential to avoiding judgment as a matter of law (see, Spears v Berle, supra, at p 263; Northern Westchester Professional Park Assoc. v Town of Bedford, supra, at pp 500-501 [comparing burden of proof in confiscation case with shifting burden in area variance case]; Richardson, Evidence §§ 95-96, at 71-73 [Prince 10th ed]; cf. Chase Manhattan Bank v State of New York, 103 AD2d 211, 221).
The landowners’ burden is not easily satisfied. Manifestly, restrictions imposed by the State in the exercise of its police power interfere with the use of the restricted property. They are justified, however, if they are reasonably related to the public health, safety and welfare and are not confiscatory. Such restrictions characteristically diminish the value of pri *77 vote property, frequently unevenly, but a property owner does not prove a taking solely by evidence that the value has been reduced by the regulation, even if it has been substantially reduced (see, e.g., McGowan v Cohalan, 41 NY2d 434, supra [79% diminution in value]; Euclid v Ambler Realty Co., 272 US 365 [75% diminution in value]; Hadacheck v Sebastian, 239 US 394 [87% diminution in value]; see also, Matter of Grimpel Assoc. v Cohalan, 41 NY2d 431 [holding that the amount of diminution’s not dispositive on the issue]). To be successful he must establish that the regulation attacked so restricts his property that he is precluded from using it for any purpose for which it is reasonably adapted (Levitt v Incorporated Vil. of Sands Point, 6 NY2d 269, 273; Arverne Bay Constr. Co. v Thatcher, 278 NY 222, 226). Stated another way, the property owner must show by "dollars and cents” evidence that under no use permitted by the regulation under attack would the properties be capable of producing a reasonable return; the economic value, or all but a bare residue of the economic value, of the parcels must have been destroyed by the regulations at issue (Spears v Berle, supra, at p 263; Marcus Assoc. v Town of Huntington, 45 NY2d 501, 506; Penn Cent. Transp. Co. v City of New York, 42 NY2d 324, 329-331, affd 438 US 104; French Investing Co. v City of New York, 39 NY2d 587, 596, appeal dismissed 429 US 990).
Petitioners contend that in applying this rule permissible use must be interpreted literally and narrowly and that the value of their property after wetland regulation must be judged in terms of the uses permitted by zoning laws as they then existed. The regulation challenged, however, derives from the Tidal Wetlands Act, not the zoning ordinance, and petitioners can no more rely in this proceeding on the fixed consequences of the Town’s zoning laws than they could rest on the contributing confiscatory effect of a restrictive deed covenant limiting development to single-family homes. Obviously, the two regulations working together have a synergistic adverse effect on the property presenting a dilemma to the landowners and if they challenge the Town’s zoning in a separate proceeding, they may be confronted with the same argument respondent makes here. Neither set of regulations is immutable, however: both contain provisions for change by variance or amendment. If petitioners attack only one set of regulations, then they must establish that the restricting effect of the other is fixed. Petitioners have chosen to attack respondent’s regulations but these regulations, standing alone, *78 are broad enough to permit economic use of the land and if petitioners claim that respondent’s regulations do not permit economic use of the land because of the restrictions imposed by the nonparty Town, then they must assume the burden of proving that the impediment to use imposed by the Town is constant because there is no reasonable probability that the Town will approve any change (cf. MacDonald, Sommer & Frates v Yolo County, All US — [dissenting slip opn of White, J.], 91 L Ed 2d 285, 300-301, supra).
This burden is not unlike that imposed on landowners in condemnation cases who must prove the reasonable probability of obtaining a variance before a higher best use of property may be used, as the basis for an award, if that is their claim (see, Matter of City of New York [Shorefront High School— Rudnick], 25 NY2d 146, 149-150, remittitur amended 26 NY2d 748; Masten v State of New York, 11 AD2d 370, affd no opn 9 NY2d 796). It is even more appropriate that a landowner making a serious claim of confiscation demonstrate that he cannot obtain a reasonable return on his properties because "[i]f the courts were forced to look to the property as it is, rather than as it could be [landowners] could frustrate any land use restrictions” (Penn Cent. Transp. Co. v City of New York, 42 NY2d 324, 333, affd 438 US 104, supra).
The practicalities of the situation also require this result. If respondent must condemn the wetlands portion of petitioners’ properties to avoid full development of it, petitioners may wait until he does so and then seek a change in zoning for the remaining uplands, reasonably claiming the right to such development because of hardship created by the substantial change in circumstances. Thus, by doing nothing to ameliorate the impact of the existing regulations petitioners control the success of their taking claim and lose nothing in the force of a subsequent submission that they should have a zoning variance. They may profit from the condemnation of the wetlands and still retain the full potential value of the uplands. Before allowing this to happen and require respondent to make the drastic choice between condemning 81 acres of wetlands at a substantial highest and best use value — approximately 500 single-family lots could be developed under prewetlands zoning regulations — or giving up this ecologically valuable wetland completely, petitioners should be required to prove that the economic value of their land has been destroyed notwithstanding any reasonably probable change in its zoning. It may be that the best way for the landowner to meet this burden of *79 proof is to establish that he sought a variance in good faith but was unsuccessful. We do not hold that variance proceedings are always required, however; other satisfactory evidence may exist to establish the landowner’s claim without resort to the full administrative process.
It is apparent from the decisions below that both courts put the burden of proof on the possibility of rezoning on respondent. Special Term found that his assumption that petitioners’ properties could be rezoned for two-family or cluster use "was never established by competent evidence”. In affirming, the Appellate Division stated that "Special Term properly found that [respondent] had failed to establish a reasonable probability of a change of zone to two-family homes” and held that its finding on that issue "cannot be faulted.” (109 AD2d, at pp 486, 487.) This allocation of the burden of proof constituted error and it cannot be found harmless. First, we are not presented with affirmed findings of fact that there is no reasonable probability of a change in zoning, but rather with findings that respondent did not sustain its burden of proving the probability of a change. When the burden of proof on this issue is properly imposed on petitioners, who must establish each element of a taking beyond a reasonable doubt, the record does not support the conclusion that petitioners have met that burden as a matter of law (cf. Fisch, New York Evidence § 1086, at 609-610 [2d ed]). Although it was undisputed that no application for rezoning from single-family residential to multifamily use had been granted in 20 years, the only specific denials of applications introduced occurred nearly 10 years prior to the hearing. Without evidence that more recent applications had been made and denied, this evidence provided little guidance of how present applications would be treated let alone applications suffering from the singular burden imposed on these lands. More significant, however, is petitioners’ concession that the only request for a rezoning to cluster use, made after amendment of the Town ordinance in 1979 allowed more cluster development, was granted for property only five miles from petitioners’ properties. This evidence presented a question of fact whether petitioners had met their heavy burden of proof. Accordingly, a new hearing is required in which the burden of proof is properly assigned to petitioners.
Respondent’s only other point requiring comment is his claim that there was not sufficient evidence of a taking because a State’s witness testified that the State would pay *80 $5,000/acre for the wetlands. He contends that when the after value is computed using that price for the wetlands the property retained sufficient economic value to warrant dismissal of petitioners’ claim. We assume the court rejected the evidence on credibility grounds, as it was entitled to do, not because it thought the destruction in value was sufficient even if the wetlands were valued at $5,000/acre. We express no opinion on whether the State’s value for the wetlands when added to the value of the entire properties was sufficient to negate a finding of a taking.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Special Term for a new hearing on petitioners’ taking claim.
Chief Judge Wachtler and Judges Meyer, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order reversed, etc.