OPINION OF THE COURT
Bruce J. Gould, J.
Petitioners seek appointment of a 7-A administrator for this *803 four-story, six-apartment walkup. There are two commercial spaces at street level. Two of the apartments are vacant. Respondents concede, as they must in view of the prior Housing Part (HP) proceeding, that most serious conditions dangerous to life, health and safety exist at these premises. The court finds that the required one third of the tenants have joined in this petition for an appointment of a 7-A administrator.
Respondents’ defense is economic infeasibility. While RPAPL article 7-A lists no such defense, the court will assume for the purposes of this decision that a defense of unconstitutional taking of property is available in a 7-A proceeding. However, by no standard have the respondents met the heavy burden of such proof, (de St. Aubin v Flacke, 68 NY2d 66 [1986].)
This building was purchased in a corporate name, with the intent of Mr. Galvano, the corporate president, that it be for his personal use, that of his family and for the installation of a pizza parlor on the street level. The latter venture, the court understands, he believed would have considerable economic viability.
Though represented by counsel in the purchasing of this structure on April 29, 1988 for $64,000 in cash and a mortgage of $70,000, respondents would have the court believe that they knew nothing of the dangerous and deteriorating conditions at the building nor of any legal restrictions imposed upon them for the continued occupancy by the existing tenants. Respondents claim total ignorance of the residential protection afforded by the rent regulatory laws.
Respondents did not call as a witness the counsel who represented them in their purchase of this building. (Richardson, Evidence § 92 [Prince 10th ed].)
The property, on a blockfront of similar buildings, is on Second Avenue between 111th and 112th Streets. The assessed value is $12,590. As noted above, it was purchased for $134,-000. Fire in the adjacent city-owned building caused some damage to the premises for which respondents received an insurance recovery.
The Department of Housing Preservation and Development (HPD) scope and cost estimate for the repairs and other work needed at the premises totals $129,325; including a new heating system ($9,500), rewiring of the entire premises ($24,-000), replacing beams and floors on each level of the building *804 ($24,000). An expert testified that the beams are in dangerous condition and would cost under $7,000 to replace. Respondents’ expert’s over-all estimates were in the $180-to-$200,000 range.
Monthly rental income from the four occupied residential tenants currently totals $445. Two apartments are vacant. They were substantially demolished under circumstances that resulted in an October 27, 1988 court order barring the respondents from further alteration, demolition or renovation to the building. If these apartments were renovated it was estimated that they could each bring a monthly rental of $600.
At trial there was considerable conflicting testimony as to whether the necessary work could be undertaken with the tenants in occupancy. That issue seems irrelevant to the court. These tenants have a legal possessory right to their apartments, which the need, if there be one, for temporary relocation does not terminate (Bobrow v 93 Perry Assocs., NYLJ, June 6, 1984, at 5, col 1 [Sup Ct, NY County]; Administrative Code of City of New York § 26-501 et seq.). The costs if any of such temporary relocation were not shown, and are not taken by the court to be overly burdensome.
The alleged economic hardship the respondents now claim they face in making the repairs required by law is self-inflicted, and on that ground alone vitiates a claim of economic infeasibility (Matter of Cowan v Kern, 41 NY2d 591, 597 [1977]).
Respondents have made no commitment to undertake to correct the conditions at these premises. They offered no proof that they could not do so. Furthermore, quite apparently respondents would simply like the premises turned over to them free of any imposition to even comply with the HP court order to correct, obtained prior to the tenants initiating this 7-A proceeding.
As noted in Eyedent v Vickers Mgt. (150 AD2d 202 [1st Dept 1989]), "The Court of Appeals held in Park West Mgt. Co. v Mitchell (47 NY2d 316, 327 [1979], cert denied 444 US 992 [1980]) that a landlord of a multiple dwelling has the obligation to maintain residential premises 'fit for human occupation * * * throughout the lease term’. Furthermore, this obligation of a landlord to keep residential property in good repair is imposed by statute (Multiple Dwelling Law § 78; Administrative Code of City of New York § 2005).”
*805 Petitioners’ HPD expert testified that the city was willing to undertake the necessary financial commitment through loans and grants to a 7-A administrator to meet the costs of the required work.
The court awards to petitioners a judgment for appointment of a 7-A administrator.