HISTORIC ALBANY FOUNDATION, INC., Appellant, and CITY OF ALBANY, Intervenor-Appellant, v JAMES COYNE et al., Respondents.

Third Department, July 12, 1990

74

### APPEARANCES OF COUNSEL

*McNamee, Lochner, Titus & Williams, P. C. (George F. Carpinello* of counsel), for appellant.

*Vincent J. McArdle, Jr., Corporation Counsel (Stacy Kitt* of counsel), for intervenor-appellant.

*William J. Conboy, II, County Attorney (Craig A. Denning* of counsel), for respondents.

OPINION OF THE COURT

LEVINE, J.

Plaintiff Historic Albany Foundation, Inc. (hereinafter plaintiff) is a domestic not-for-profit corporation whose major purpose is the preservation of historic structures in the City of Albany. It brought this action seeking declaratory and injunctive relief, essentially to prevent defendant County of Albany from proceeding with its plan to demolish a county-owned block of houses in a rowhouse structure at Division and Green Streets in the city, without first complying with the provisions of the city's Historic Resources Commission Ordinance (Code of City of Albany §§ 1-126—1-136) (hereinafter the ordinance) and the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA).

The ordinance created an Historic Resources Commission (hereinafter the Commission) whose stated purposes were, *inter alia,* to safeguard and preserve the historical, cultural, architectural and archeological heritage of the city, foster harmonious orderly and compatible development within the city, foster civic beauty and protect and enhance the city's attractiveness to visitors (Code of City of Albany § 1-127). The ordinance created a downtown Albany Historic District, generally encompassing the area of earliest settlement of the city in the 17th century (Code of City of Albany § 1-130). It also created a Secondary Downtown Review District, adjacent to the Historic District, over which the Commission was given regulatory supervision as to new construction and demolition of existing structures (Code of City of Albany § 1-130.1).

The historical preservation and aesthetic purposes of the ordinance are implemented through the requirement that for major alterations, new construction or demolition, a certificate of appropriateness must be sought and obtained from the Commission (Code of City of Albany § 1-131). Detailed criteria for approval of a certificate of appropriateness are set forth in the ordinance (Code of City of Albany § 1-132). However, waiver of the criteria or standards for obtaining a certificate of appropriateness may be applied for on the basis of necessity, to eliminate practical difficulties or economic hardship (Code of City of Albany § 1-135 [a]). Of most pertinence to this case, the ordinance prohibits demolition of structures in the protected districts unless the applicant shows that the building is a "non-contributing structure in the district" or that preservation of the building would constitute a hardship (Code

of City of Albany § 1-135 [b] [1]). On the latter score, the Commission is required to consider three factors, i.e., whether the property is capable of earning a reasonable return, is adaptable to some other use which would result in a reasonable return, or an attempt has been made to sell the property to someone interested in preserving it (Code of City of Albany § 1-135 [b] [1] [a]-[c]). Finally, demolition also may not be permitted until the applicant "has submitted and obtained design approval of his/her plans for new development under the provisions of this ordinance", including the possible submission of guarantees secured by a performance bond (Code of City of Albany § 1-135 [b] [2]). A maximum delay between demolition and the "commencement of new construction or lot improvement" of six months is also imposed (Code of City of Albany § 1-135 [b] [2]).

In the county's response to plaintiff's motion for a preliminary injunction, it set forth facts concerning the dilapidated condition and structural impairment of the subject buildings, such that the county's engineer determined that risk to public safety required demolition. It was also averred that one of the interconnected buildings was determined to be unsafe by the city Building Commissioner, who ordered the county to secure the building and submit plans to stabilize, restore or demolish it. Apparently, however, the city Building Commissioner did not choose to exercise his emergency powers to order demolition for safety reasons, which would have been exempt under the ordinance (Code of City of Albany § 1-136.1). The county also initially claimed immunity from the ordinance, but later abandoned that position.

After Supreme Court denied the parties' cross motions to dismiss the complaint and for summary judgment, plaintiff moved to reargue its motion for summary judgment and the county, in response, raised the issue of the constitutionality of the ordinance. Supreme Court granted the motion to reargue and then dismissed the complaint on the ground that the ordinance violated the constitutional prohibitions against the taking of private property without just compensation (US Const 5th Amend; NY Const, art I, § 7). The court reasoned that the requirement of the ordinance only permitting demolition upon the applicant's submission of plans for new development would impose "an undue and uncompensated burden" for the benefit of the public at the owner's expense in requiring "development of the demolished parcel * * * without compensation". This appeal followed.

We reverse. For obvious reasons, historic district and/or landmark preservation legislation commonly regulates and restricts demolition of buildings in protected districts, and has been authoritatively upheld against constitutional attacks under the "Takings" Clause *(see, Penn Cent. Transp. Co. v New York City,* 438 US 104; *Maher v City of New Orleans,* 516 F2d 1051, *cert denied* 426 US 905). Section 1-135 (b) (1) of the ordinance, keying demolition in effect to a showing either that the building is not of historical, archeological or aesthetic value, or that the owner will suffer hardship by being required to repair or maintain property incapable of yielding a reasonable return, virtually replicates the regulatory framework found entirely valid in *Penn Cent. Transp. Co. v New York City (supra,* at 110-112, 136). The county has never challenged that provision and, indeed, Supreme Court's decision is expressly and exclusively based upon the additional requirement for a certificate of appropriateness of demolition contained in section 1-135 (b) (2) of the ordinance, the submission and approval of plans for "new development". It follows from this that, even were we to agree with Supreme Court's rationale, reversal would be required. The ordinance contains a severability clause (Code of City of Albany § 1-136.2). Therefore, section 1-135 (b) (1), unaffected by Supreme Court's decision, remains in full force and effect. Since the county concededly never processed an application before the Commission in compliance with section 1-135 (b) (1), plaintiffs are entitled to injunctive relief barring the county from demolition until it has complied with the valid and unchallenged provision of the ordinance which remained unaffected by Supreme Court's ruling.

In any event, we have concluded that Supreme Court's determination of the invalidity of section 1-135 (b) (2) of the ordinance was in error. As already noted, the county never proceeded before the Commission to demonstrate the economic impact upon it of compliance with the ordinance, including the facts regarding the present condition of the structures involved. This failure precluded the Commission from construing and implementing section 1-135 (b) (2) in determining whether demolition would be permitted, and, if so, what if any conditions regarding new development on the site would be imposed. Consequently, Supreme Court did not have the specific, concrete facts before it to determine whether the particular restrictions and conditions actually imposed on the county's right to demolish were so severe as to amount to a taking

*(see, Penn Cent. Transp. Co. v New York City, supra,* at 124). It follows that Supreme Court's ruling, purely and simply, constituted a determination of the *facial* invalidity of section 1-135 (b) (2) of the ordinance. A land use restriction such as this could only be found to be facially invalid, however, upon a showing that (1) the challenged provision is "not reasonably necessary to the effectuation of a substantial public purpose" *(Penn Cent. Transp. Co. v New York City, supra,* at 127; *see, Seawall Assocs. v City of New York,* 74 NY2d 92, 107, *cert denied* — US —, 110 S Ct 500) or, put another way, " 'does not substantially advance legitimate state interests' " *(Keystone Bituminous Coal Assn. v DeBenedictis,* 480 US 470, 485, quoting *Agins v Tiburon,* 447 US 255, 260), or (2) the *mere enactment* of the ordinance deprives the county of any economically viable use of the subject property *(Keystone Bituminous Coal Assn. v DeBenedictis, supra,* at 494-496; *Hodel v Virginia Surface Min. & Reclamation Assn.,* 452 US 264, 295-296).

The county has not even attempted to demonstrate that the legislative requirement of an advanced submission of some plan of new development upon the site of a proposed demolition is not reasonably necessary to effectuate the clearly legitimate legislative purposes, previously described, of preserving the ambiance of protected historic districts and of promoting harmonious, compatible new developments, particularly where the structure to be demolished itself may have historical or aesthetic value. Indeed, permitting demolition without assurance that it will be followed by *some* form of development of the site would create a grave risk of the site becoming overgrown with vegetation and a receptacle for litter and refuse, totally antithetical to the aesthetic purposes of the ordinance. Requiring the plan to be submitted in advance of demolition insures that the owner is willing and capable of accomplishing the necessary amelioration of the effects of demolishing the possibly valuable structure and not just abandoning the site or devoting it to a more profitable, albeit incompatible, use. Thus, in our view, the requirements of section 1-135 (b) (2) do substantially advance the legitimate municipal purposes underlying the ordinance and, by the same token, there is a direct *nexus* between its requirements and the purposes underlying the ordinance's restrictions on demolition *(cf., Nollan v California Coastal Commn.,* 483 US 825, 837).

Likewise, the county has clearly failed to show that the

requirement of submission and approval of a suitable plan of new development as a condition for permitting demolition deprives the county of all economically viable use of the subject property. The right to demolish is but one strand in the bundle of property rights the county enjoys. In the facial posture of this case, the county must be considered completely free to occupy, restore, use, rent or sell the subject buildings. Restricting the "demolition strand" may perhaps diminish the value of the property or prevent its most profitable use, but these do not constitute a taking in terms of impact upon the property as a whole *(see, Penn Cent. Transp. Co. v New York City, supra,* at 130-131, 136; *see also, Keystone Bituminous Coal Assn. v DeBenedictis, supra,* at 496-498; *Greenbriar, Ltd. v City of Alabaster,* 881 F2d 1570, 1576, n 11). Moreover, nothing in the challenged provision of the ordinance impairs the county's valuable right to exclude physical occupation of the property by third parties *(cf., Nollan v California Coastal Commn., supra,* at 831-832; *Seawall Assocs. v City of New York, supra,* at 106).

Also demonstrating the county's failure to prove that mere enactment of section 1-135 (b) (2) of the ordinance deprived it of economically viable use of the subject property is the county's failure to avail itself of the opportunities which may be provided under the ordinance for obtaining administrative relief from the strict enforcement of the new development requirement of that section. As previously described, section 1-135 (b) (2) requires submission plans for new development "under the provisions of this ordinance". To the extent that the plan submitted may involve new construction, "under the provisions of this ordinance", a certificate of appropriateness would be required *(see,* Code of City of Albany § 1-131 [a]). However, also as previously discussed, strict enforcement of the standards and criteria for a certificate of appropriateness may be waived or varied by the Commission in a proper case to avoid "practical difficulties or economic hardship" (Code of City of Albany § 1-135 [a]). Thus, the ordinance is at least subject to the construction that the county could obtain relief from the Commission from any unduly onerous burden of reconstruction as a condition to demolition, thereby obviating the county's constitutional objections *(see, Hodel v Virginia Surface Min. & Reclamation Assn.,* 452 US 264, 297, *supra).*

In short, the county has shown nothing more than that it may be subjected to some as yet unknown expense of new development before it can demolish the property if section 1-

135 (b) (2) is enforced. This alone, however, is insufficient to establish a taking without just compensation. Facially, the potential burden here is no more a taking than the owner's burden to keep an historic landmark in good repair imposed under the local law upheld in *Penn Cent. Transp. Co. v New York City (supra),* or the statutory duty imposed on mine operators to dedicate in the aggregate some 27 million tons of extractable coal as a support structure for surface buildings located over mines, upheld in *Keystone Bituminous Coal Assn. v DeBenedictis (supra),* or the analogous statutory burdens of land restoration and reclamation imposed upon strip mine operators, upheld against a facial challenge in *Hodel v Virginia Surface Min. & Reclamation Assn. (supra).* Much less has the county satisfied its burden of "show[ing] by 'dollars and cents' evidence that under no use permitted by the regulation under attack would the properties be capable of producing a reasonable return; the economic value, or all but a bare residue of the economic value, of the parcels must have been destroyed by the regulations" *(de St. Aubin v Flacke,* 68 NY2d 66, 77).

For all the foregoing reasons, the dismissal of the complaint must be reversed. Moreover, the various factual issues raised by the parties, e.g., as to the needs for demolition, and economic considerations, should not be addressed in this action, but should be resolved in a proceeding before the Commission, the agency created to implement the ordinance. Accordingly, plaintiff's motion for summary judgment should have been granted.

KANE, J. P., CASEY, MERCURE and HARVEY, JJ., concur.

Order modified, on the law, with costs to plaintiff Historic Albany Foundation, Inc., by reversing so much thereof as granted defendants' motion to dismiss and denied plaintiff's motion for summary judgment; summary judgment awarded to plaintiff; and, as so modified, affirmed.