Stein, J.
Appeal from a judgment of the Supreme Court (Nolan Jr., J.), entered March 18, 2013 in Saratoga County, which, among other things, dismissed petitioners’ application, in a proceeding pursuant to CPLR article 78, to, among other things, review a determination of the Saratoga Springs Design Review Commission authorizing demolition of a certain structure.
Petitioner Saratoga Springs Preservation Foundation (hereinafter Foundation) is a not-for-profit organization that has a primary goal of preserving the historic structures located within the City of Saratoga Springs, Saratoga County. In September 2008, respondent Joe Boff purchased property, which included a residence — known as the Winans-Crippen House — in the historic Franklin Square District in the City. The Winans-Crippen House is generally recognized as a historic structure and is listed on the National Register of Historic Places and included on the City’s list of landmarks and historic districts. Within months after he purchased the property, Boff filed an application with the Saratoga Springs Design Review Commission (hereinafter DRC[1]) for a permit to demolish the Winans-Crippen House as an unsafe structure pursuant to Code of City of Saratoga Springs former § 240-7.10 (F) (1) (a). The DRC declared itself the lead agency for environmental review under the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), ruled that the proposed demolition was a type I action, issued a positive declaration of environmental significance and required Boff to submit a draft environmental impact statement. Boff submitted the draft environmental impact statement in June 2012 and, after receiving various inspections and structural reports and conducting a public hearing, the DRC voted to accept the final environmental impact statement as complete in November 2012.
*1327 In December 2012, the Foundation, along with four individual members, commenced this CPLR article 78 proceeding against respondent City of Saratoga Springs, Boff and certain individual members of the DRC, challenging the DRC’s SEQRA determination and seeking an order enjoining the demolition of the structure.[2] Shortly thereafter, the DRC voted to approve Boffs application for a demolition permit and petitioners subsequently filed an amended petition adding a cause of action challenging that determination. After notifying the parties that it intended to treat the proceeding as an application for summary judgment, Supreme Court dismissed the amended petition. Upon petitioners’ appeal, we now affirm.
Initially, we reject petitioners’ contention that the demolition application submitted by Boff did not comply with the requirement set forth in the City Code that such application include postdemolition development plans (see Code of City of Saratoga Springs former § 240-7.10 [F] [3]).[3] In Boffs application and at subsequent meetings of the DRC, he represented that his postdemolition proposed site plan was to grade the lot, plant grass and maintain the property, but that he did not have immediate plans to begin construction on the site. Although the DRC recognized that it “typically requires a more extensive development plan in connection with an application for demolition,” it determined that, under the circumstances presented, including “the current uncertain real estate market and the uniquely deteriorated condition of the structure, it [did] not seem unreasonable to seek to demolish the unsafe structure prior to developing construction plans.” The DRC also noted that any future construction plans on the site would require its full review and approval. In addition, the record contains evidence that the DRC has accepted comparable postdemolition plans with respect to other applications. Under these circumstances, the DRC’s determination that Boff’s demolition application complied with the City Code was not arbitrary and capricious (compare Historic Albany Found, v Coyne, 159 AD2d 73 [1990]).
We are also unpersuaded by petitioners’ claim that the DRC *1328 impermissibly segmented its SEQRA review of Boff s demolition application. “Segmentation is ‘the division of the environmental review of an action such that various activities or stages are addressed [for purposes of environmental quality review] as though they were independent, unrelated activities, needing individual determinations of significance’ ” (Matter of Friends of Stanford Home v Town of Niskayuna, 50 AD3d 1289, 1290 [2008], lv denied 10 NY3d 716 [2008], quoting 6 NYCRR 617.2 [ag]; see Matter of Concerned Citizens for Envt. v Zagata, 243 AD2d 20, 22 [1998], lv denied 92 NY2d 808 [1998]). Such division is impermissible when the environmental review of an action is divided into smaller stages in order to avoid the detailed review called for under SEQRA (see Matter of Concerned Citizens for Envt. v Zagata, 243 AD2d at 22). Conversely, segmentation is “allowed when the agency conducting environmental review clearly sets forth the reasons supporting segmentation and ‘demonstrate^] that such review is clearly no less protective of the environment’ ” (Matter of Defreestville Area Neighborhoods Assn. v Town Bd. of Town of N. Greenbush, 299 AD2d 631, 634 [2002], quoting 6 NYCRR 617.3 [g] [1]; see Matter of Concerned Citizens for Envt. v Zagata, 243 AD2d at 22).
Here, during the SEQRA review process, Boff represented that he had no immediate intention of developing the property following demolition. The DRC determined that the structure was unsafe, considered Boff’s postdemolition plan of keeping the property clean and fenced and clearly explained its reasons for not requiring Boff to submit additional postdemolition plans. Moreover, any future construction plans would require DRC review and, therefore, the environment would not be less protected. Under these circumstances, we are satisfied that no impermissible segmentation occurred (see Matter of Concerned Citizens for Envt. v Zagata, 243 AD2d at 23; compare Matter of Defreestville Area Neighborhoods Assn. v Town Bd. of Town of N. Greenbush, 299 AD2d at 634-635).
Nor do we find any merit to petitioners’ challenge to the DRC’s findings that the structure was unsafe and could not be preserved. Pursuant to the City Code, the DRC was required to determine whether the structure was “a danger to the health, safety and welfare of the public” and whether it could “reasonably be repaired in such a way [as] to remove the unsafe condition” (Code of City of Saratoga Springs former § 240-7.10 [F] [1] [a]). In addition, Boff’s demolition application was required to show “good cause” as to why the structure could not be preserved (Code of City of Saratoga Springs former § 240-7.10 [F] [2]). Here, in determining that the structure was a danger *1329 to the public, the DRC relied upon, among other things, a June 2009 report issued by the City’s Assistant Building Inspector which declared the building to be an unsafe structure as defined in the Property Maintenance Code of New York State, as well as the fact that, in 2010, the City’s Code Enforcement Officer had sought a demolition order based upon its unsafe condition.[4] The DRC also considered various documents prepared by the City’s Code Enforcement Officer, Fire Chief and retired Assistant Fire Chief, as well as an engineer hired by Boff, all of whom reflected their opinions that the building was unsafe. The DRC took note that certain improvements to stabilize the structure had been made, but concluded, based upon the opinions of various City officials, that the structure remained unsafe despite those improvements.[5] Notwithstanding the contrary evidence submitted by petitioners, including reports from an engineer and architect who concluded that the structure was safe, we are unpersuaded that the DRC’s reliance on those public employees charged with protecting the health, safety and welfare of the City’s inhabitants was arbitrary and capricious (see Matter of Historic Albany Found. v Fisher, 209 AD2d 135, 138 [1995]).
Turning to the required showing of good cause as to why the structure could not be preserved, petitioners argue that the DRC improperly found that Boff established good cause based upon the economic unfeasibility of renovation.[6] In this regard, the DRC noted that the structure was one of hundreds of contributing buildings in the Historic District and weighed the “value of possible future restoration of the structure, particularly in light of significant structural and financial obstacles,[7] with the possibility of damage to property or personal injury or death.” Considering the DRC’s balanced analysis, we find its determination to be reasonable and supported by the record, and we discern no basis to disturb it.[8]
Petitioners’ argument that the DRC’s determinations should *1330 be invalidated because one of the four voting members had a disqualifying conflict of interest pursuant to the City’s Code of Ethics (see Code of City of Saratoga Springs §§ 13-2, 13-3 [A], [B] [2]) is similarly unavailing.[9] Questions of conflict of interest must be determined on a case-by-case basis and “[t]he mere fact of employment or similar financial interest does not mandate disqualification of the public official involved in every instance” (Matter of Schupak v Zoning Bd. of Appeals of Town of Marbletown, 31 AD3d 1018, 1020-1021 [2006], lv dismissed and denied 8 NY3d 842 [2007] [internal quotation marks and citations omitted]; see Matter of Eadie v Town Bd. of Town of N. Greenbush, 47 AD3d 1021, 1024 [2008]).
Here, petitioners rely on the City’s Code of Ethics, which prohibits a City officer or employee from taking or failing to take “any action, in a manner which he or she knows, or has reason to know, may result in a personal financial benefit for ... [a] customer or client” (Code of City of Saratoga Springs § 13-3 [A] [4]). Under the City Code, that prohibition is limited to circumstances in which the City official knows or has reason to know that his or her outside employer or business has supplied goods or services that are valued at more than $1,000, during the previous 24 months (see Code of City of Saratoga Springs § 13-2). The record reflects that DRC member respondent Richard Martin disclosed at a May 16, 2012 meeting that his construction business had been under contract with Boff on an unrelated project two years earlier, but determined that his recusal was not required.[10] Boff explained in an affidavit that he had hired a general contractor to perform restoration work on an unrelated property in the City and that his general contractor had hired Martin’s company to perform framing work. In his own affidavit, Martin averred that his company had done work for Boff starting in 2009, which was completed in June 2010. During the time that Boff’s demolition application was pending until in or about May 2012, neither Boff nor Martin knew of their business relationship. Nor is there any evidence that they should have known about it. Therefore, any action *1331 taken by Martin during that period was not in violation of the City Code. Further, any votes taken by Martin with regard to Boff s application after learning of their business relationship occurred more than two years after that relationship had ended.[11] Moreover, under the circumstances presented here, it is reasonable to conclude that the business relationship between Boff and Martin was not such that Martin would be motivated to favor Boff s position.[12] Accordingly, we cannot conclude that Martin’s disqualification was required.
To the extent not specifically addressed herein, petitioners’ remaining contentions have been examined and found to be lacking in merit.
Lahtinen, J.P., Spain and Egan Jr., JJ., concur. Ordered that the judgment is affirmed, without costs.

. The DRC is “charged with the responsibilities of administering and carrying out of the intent, process and actions” of the Historic and Architectural Review sections of the City Code.

. We note that, in separate proceedings regarding the property, Saratoga Springs City Court (Wait, J.) had previously directed Boff to secure and stabilize the structure and Supreme Court had enjoined Boff and the City from demolishing the property without, as pertinent here, the prior approval of the DRC.

. The applicable provision of the City Code was superceded in September 2012. The new ordinance uses similar language and contains the same requirements for postdemolition plans (see Code of City of Saratoga Springs § 7.4.11 [B] [5]).

. Although a demolition order was issued by Saratoga Springs City Court (Doern, J.) with Boffs consent, it was subsequently vacated because of the proceedings that were pending before the DRC.

. Additionally, some DRC members inspected the property.

. Petitioners contend that any financial hardship was self-created by Boff, due to his admitted failure to adequately inspect the structure before purchasing the property.

. The draft environmental impact statement contained an estimate for projected reconstruction or replication costs of approximately $1,600,000 at minimum, with additional expenses bringing the total cost to more than $2,500,000. These costs were compared to a reconstructed fair market value of “no more than $800,000.”

. We reject petitioners’ argument that Code of City of Saratoga Springs former § 240-7.6 required Boff to assert a claim of financial hardship before *1330 the Zoning Board of Appeals. That ordinance provides an avenue of relief when an application is denied by the DRC. It does not, as petitioners suggest, prevent an applicant from raising the issue of hardship before the DRC in the first instance.

. The DRC consists of seven members (see Code of City of Saratoga Springs § 19-1 [A]), four of whom are required to establish a quorum.

. We further note that the City’s Ethics Board later concluded that there was insufficient information to support a finding that Martin had engaged in prohibited conduct in connection with Boff s application.

. The record does not reflect any vote by Martin in relation to the application from the time of his disclosure until November 2012.

. Notably, Martin also disclosed that his company is a member of the Foundation.