*335 OPINION OF THE COURT
Lawrence Newmark, J.
Upon remand from the Appellate Division, Second Department, and the evidentiary hearing before the undersigned pursuant thereto, the wetlands regulations considered together with denial of petitioner’s application described herein, do not work an unconstitutional taking of the petitioner’s property; and it is ordered that the proceeding is dismissed.
The petitioner owns two separate parcels bounded by the Quogue Canal on the north side and the Atlantic Ocean on the south side. The parcels are separated by Dune Road. The deed to each parcel recites a boundary "to the center (of Dune Road).” The parcel abutting the canal is tidal wetlands with a mosquito ditch and wetlands vegetation thereon. The parcel abutting the ocean contains two houses.
In 1957 and 1958 the Atlantic Corporation purchased the canal side parcel for $8,500 and the ocean side parcel for $15,000. Respondent has objected to petitioner’s characterizing Atlantic Corporation as wholly owned by the petitioner on the basis of disputes during discovery resulting in the order of the Honorable Melvyn Tanenbaum striking interrogatories regarding the history of Atlantic Corporation.
Deeds, which are in evidence, however, indicate that petitioner was the sole shareholder of Atlantic Corporation at the time the corporation was dissolved and the parcels were purchased by petitioner for $200 in 1979. Said deeds were recorded on December 31, 1979.
A bulkhead was constructed on the canal side tract in 1968. This bulkhead collapsed in June 1983. Petitioner applied for a bulkhead permit, but discontinued his application in December 1983.
On May 25, 1988, petitioner filed another application with the respondent Department of Environmental Conservation (DEC) for permission to replace the collapsed bulkhead with a 91-foot bulkhead, construct a 200-foot bulkhead, and dump 500 cubic yards of fill into the area behind the bulkhead. Petitioner never sought the approval of the U.S. Army Corps of Engineers, as required by the Rivers and Harbors Appropriation Act of 1899 (33 USC § 401 et seq.) and the Clean Water Act (33 USC § 1251 et seq.), or of the appropriate local (i.e., county, town and village) regulatory authorities.
On September 19, 1988, the DEC granted petitioner a permit to rebulkhead the boat slip, to construct a new bulkhead, but *336 not the 200-foot bulkhead requested, and to dump a limited amount of fill behind the bulkhead and boat slip.[1],[2]
Petitioner appealed the determination. Upon hearing the matter, the Administrative Law Judge (ALJ) found that petitioner had not established the need for a bulkhead. The DEC adopted the ALJ’s recommendation on May 23, 1990. On June 22, 1990, petitioner brought a proceeding, pursuant to CPLR article 78, challenging the Commissioner’s decision on the grounds that it lacked substantial evidence and constituted an unconstitutional "taking” of his property.
The matter was transferred to the Appellate Division; and in 1993 the Second Department determined that the DEC’s decision with respect to the bulkhead was supported by substantial evidence, and that petitioner did not establish that the bulkhead was reasonable and necessary. The Court then remanded the matter for an evidentiary hearing on whether the DEC’s decision constituted an unconstitutional taking (Matter of Brotherton v Department of Envtl. Conservation, 189 AD2d 814 [2d Dept 1993]).
At the hearing, a licensed real estate appraiser and broker (Patrick A. Given) testified on behalf of the DEC that the entire property, running from the ocean to the bay, was worth approximately $1,100,000 as vacant land. He further testified that the canal side tract (approximately 1.6 acres) was worth $80,000 at its highest and best use, for recreational use and water access.
Gary P. Taylor, a licensed real estate appraiser and salesman, testified for petitioner that, if the canal side tract were buildable as residential property and bulkheaded, it would have a value of $745,000. In its unbulkheaded and nonbuildable condition, he valued the tract at $55,000. He estimated it would cost $30,000 to install a bulkhead and place fill on the property.
Aldo Andreoli, a consultant on environmental health, testified for petitioner that, if bulkheaded and filled, the tract would qualify for a septic tank leaching pool system.
Aerial photographs from 1955, 1974, 1980 and 1993 indicate, among other things, the presence on the property of a mosquito *337 ditch. This led Mr. Andreoli to opine that the property had always been wetlands to a degree, but has now become almost entirely wetlands.[3]
The Tidal Wetlands Act (ECL 25-0101 et seq.) was enacted by the New York State Legislature to preserve these vital areas. In order to protect the property owner, the Legislature also provided for judicial review of DEC action taken pursuant to permit requests (Gazza v New York State Dept. of Envtl. Conservation, 89 NY2d 603).
The Court of Appeals in Gazza (supra) determined that petitioner could not succeed on his takings claim because, having purchased the property after the enactment of the wetlands legislation, he never owned the absolute right to build on his land without a variance.
This brings the court back to petitioner’s argument that he owned the tract in question since 1958. Given the proceedings in discovery and the nature of the testimony at the hearing, there is no competent evidence before the court that petitioner was the sole owner of the property since 1958. The property was owned by a separate corporate entity until its dissolution. The court, therefore, finds that this petitioner has owned the property since 1979.
Petitioner, an experienced builder/developer, took title to property limited by wetlands regulations, and could have had no reasonable investment-backed expectations constituting protected property interests (Ciampitti v United States, 22 US Ct Cl 310, 320 [1991]; Penn Cent. Transp. Co. v City of New York, 438 US 104 [1978]; Lucas v South Carolina Coastal Council, 505 US 1003 [1992]; Gazza v New York State Dept. of Envtl. Conservation, supra; Basile v Town of Southampton, 222 AD2d 638 [2d Dept 1995]).
Further, the value $745,000 placed on the property by petitioner’s expert assumes the granting of all permits necessary for the construction of a house. Except for Mr. Andreoli’s statements regarding a septic system, such an assumption is without foundation in the record.
A property owner who challenges land regulation as an unconstitutional taking must demonstrate by "dollars and cents” evidence that under no permissible use would the parcel as a whole be capable of producing a reasonable return (Spears v *338 Berle, 48 NY2d 254, 263 [1979]; Matter of Smith v Williams, 166 AD2d 536 [2d Dept 1990]; de St. Aubin v Flacke, 68 NY2d 66 [1986]).
Further, petitioner must establish every element of his claim beyond a reasonable doubt, a burden of proof which remains his throughout the case and never shifts to the State (de St. Aubin v Flacke, supra, at 864). Petitioner’s proof in this case fails to satisfy this burden.
Even if the canal side tract is considered as a separate parcel, there is ample evidence in the record that the property has recreational value. Petitioner, having historically used the canal side tract for access to the canal and the bay, cannot establish that the DEC decision so restricts his property that he is precluded from using it for any purpose for which it is reasonably adapted (de St. Aubin v Flacke, supra, at 865).
Finally, DEC makes a persuasive argument that the two parcels should be treated as a whole, given their unity of use and ownership since 1979 (see, Penn Cent. Transp. Co. v City of New York, supra; Ciampitti v United States, supra). As such, uncontroverted proof indicates that the value of this parcel, as a whole, is $1,100,000.
In view of the foregoing, the court finds that the subject denial of petitioner’s application did not work an unconstitutional taking of his property interests.
The petition is dismissed.

. Petitioner has, apparently, been using the canal side tract as access to the canal for the purpose of travelling to his other east end properties.

. Petitioner alleges that the DEC’s mandated "Use Letter” stated that a permit would not be issued for the construction of a house on the canal side tract, even though petitioner did not request this relief.

. The Appellate Division’s opinion in Matter of Brotherton v Department of Envtl. Conservation (supra) indicates that the DEC officially designated 1.5 of the 1.6 acres as tidal wetlands in 1989.