In the Matter of ERNST SCHWARZ, Appellant, against GENERAL ANILINE & FILM CORPORATION, Respondent.

VAN VOORHIS, J. (dissenting). This appeal involves the important question whether an officer and director, who has been indicted under the Federal antitrust law jointly with his corporation and other directors, has been guilty of such personal misconduct as to prevent him from being indemnified by the corporation for his legal expenses in preparing to defend against the charge. This indictment was found in 1941; in 1950 petitioner and the other individual defendants were permitted by the United States District Court for the Southern District of New York to plead *nolo contendere*. Petitioner was fined $500, but he also incurred and paid $7,528.35 for legal fees and disbursements in preparing to defend himself.

He applied to be reimbursed for the latter sum in the antitrust proceeding in the Federal court, which held that such relief could be granted only in a separate special proceeding instituted in the Supreme Court of New York State. Consequently he has commenced this special proceeding under article 6-A of the General Corporation Law, to compel respondent to defray this expense.

Respondent moved at Special Term to dismiss the petition upon the grounds that the Supreme Court lacks jurisdiction of the subject matter, and that the petition fails to state facts sufficient to constitute a cause of action. The petition was dismissed, apparently upon the latter ground. The dismissal being upon the law, all allegations of fact contained in the petition are to be construed favorably to petitioner.

Special Term held that petitioner's conviction of violating the antitrust law upon his plea of *nolo contendere*, was an adjudication that he had been guilty

of "misconduct in the performance of his duties", within the meaning of section 64 of article 6-A of the General Corporation Law, and that for this reason he cannot compel the corporation to reimburse him for his legal expenses. The general principle is also adduced that to enable him to do so would allow him to take advantage of his own wrong. Both of these contentions seem to me to be erroneous.

Even if the plea of *nolo contendere* were treated as a conviction for the purposes of this proceeding, it would not necessarily be an adjudication of misconduct on the part of petitioner toward his corporation. The burden is upon the corporation of establishing that this conviction is *res judicata* within the meaning of section 64. If there be any rational theory, consistent with the conviction, under which petitioner would not be guilty of misconduct toward his corporation within the meaning of section 64 of the General Corporation Law, then he is entitled to prevail against the contention that the judgment of conviction is a bar (*Schuylkill Fuel Co.* v. *Nieberg Realty Corp.*, 250 N. Y. 304). The misconduct referred to in section 64 relates to behavior on the part of an officer or director which is adverse to the interests of the corporation, such as misappropriation of funds. Although broadened in scope by subsequent amendment, this portion of the General Corporation Law was first enacted to enable officers and directors to be recompensed for their legal expense in defending derivative suits brought by minority stockholders (see General Corporation Law, former § 61-a). It was in this context that the phraseology was formulated, which has been continued in the present section 64, that such a corporate official is not to be reimbursed for his legal expenses where he has been adjudged "liable for negligence or misconduct in the performance of his duties". This referred to liability of an officer or director to the corporation for misappropriation or waste of its funds. It was never intended to stand in the way of a corporation's recompensing its officer for defending himself against charges arising out of services rendered by him to the corporation, in loyally and efficiently promoting its interests according to the best of his knowledge and ability. Conviction of petitioner, even on plea of guilty or after a trial, would not disclose a conflict of interest between him and the corporation.

Public policy would prevent indemnification if the conviction were based upon a charge involving moral turpitude (*Stone* v. *Freeman*, 298 N. Y. 268), but violation of the antitrust laws is considered ordinarily to be *malum prohibitum* and not *malum in se* (*United States* v. *Socony-Vacuum Oil Co.*, 23 F. Supp. 531, 532). Otherwise, public policy would render it impossible for a corporation to indemnify its agents against the consequences of many types of conduct forbidden by penal laws and regulations, the number and complexity of which is characteristic of modern times. Such a result would prevent corporations from defraying the expense of defending their officers in many situations. The public policy of the State is not at variance with indemnification in all instances where crime is involved. Thus in *Messersmith* v. *American Fidelity Co.* (232 N. Y. 161, 164) liability was upheld upon an indemnity policy of insurance where the insured had been guilty of serious infractions of the Motor Vehicle Law. The court said: "Liability of the owner who is also the operator can never be incurred without fault that is personal. Indeed, the statute has so covered the field that it can seldom, if ever, be incurred without fault that is also crime." Nevertheless, public policy was held not to stand in the way of indemnification. The Court of Appeals added, that what is true of insurance for the benefit of owners of automobiles is true also

of insurance for the benefit of employers of labor, stating: " Every violation of the Labor Law is to-day a misdemeanor ", citing section 1275 of the Penal Law.

Much that is said in the *Messersmith* case applies in principle here. No principle of public policy forbids indemnification of petitioner, and he is entitled to recover in this proceeding unless the word "misconduct" as used in section 64 of the General Corporation Law was intended to refer to this sort of situation. The history of the statute, as well as reason and common sense, indicates that petitioner's conduct does not fall within that category.

Allowing to appellant the most favorable view of the facts, since he has been denied a trial by the order dismissing his petition, we must assume for the purpose of this appeal that this was not an aggravated violation of the antitrust law, which is further indicated by the small fine of $500. The facts in the antitrust prosecution are not before us. Since the burden of establishing the conviction as *res judicata* rests upon respondent (*Schuylkill Fuel Co.* v. *Nieberg Realty Corp., supra*), we must assume that no question of criminal intent was involved. In the recent case of *United States* v. *Aluminum Co. of America* (148 F. 2d 416, 431) it was said in the opinion: "We disregard any question of 'intent.'" The lack of anything approaching *mens rea* as an ingredient in the crime was disavowed, with the statement that it was unnecessary for the prosecution in the *Aluminum Company* case even "to show that many transactions, neutral on their face, were not in fact necessary to the development of 'Alcoa's' business, and had no motive except to exclude others and perpetuate its hold upon the ingot market." (P. 432.) It was held to be enough to support a conviction that the defendants intended to act in furtherance of the development of the business, which had resulted unintentionally in the creation of the power to monopolize. The term "misconduct" as employed in section 64 of the General Corporation Law means more than this. It refers to something done with wrongful intent in derogation of the interests of the corporation. In the case of antitrust prosecutions, the convicted officer or director may have been and probably has been doing what seemed to be best to promote the interests of the corporation. He has probably been unable to know whether his conduct really was prohibited until after the Supreme Court of the United States has decided the particular case after a long, complicated and expensive trial. This is an occupational hazard to the officers and directors of large corporations, as truly as falling from a ladder is an occupational hazard to a painter or carpenter. The courts and public are aware of this, and therefore do not ordinarily think of such convictions as involving moral turpitude. Common fairness requires that corporations should indemnify their officers against the onerous cost of this kind of litigation, that is a risk which they often have to run in order to accomplish the legitimate purposes of their businesses, which serve the public as well as the stockholders.

Upon another and narrower ground, the dismissal of this petition was erroneous. Petitioner's conviction under the antitrust law was on plea of *nolo contendere*. This did not constitute an "adjudication" of misconduct within the meaning of section 64 of the General Corporation Law. Section 67 directs the corporation to pay to the officer his legal expenses after a hearing, if "the court shall find that the applicant, his testator or intestate was successful in whole or in part, or that the action against him has been settled with the approval of the court". The disposition of this prosecution in the Federal court clearly falls within the latter description. The fact that

section 67 charges the legal expense of the officer against the corporation in a case where there has been a settlement approved by the court, indicates that a vindication on the merits is not intended to be a condition precedent (*Tichner* v. *Andrews,* 193 Misc. 1050; *Dornan* v. *Humphrey,* 278 App. Div. 1010, revg. 100 N. Y. S. 2d 684). A plea of *nolo contendere* could be entered only with the consent of the Federal court, it being in the nature of a compromise between the People and the defendant (*Twin Ports Oil Co.* v. *Pure Oil Co.,* 26 F. Supp. 366, 372; *State* v. *LaRose,* 71 N. H. 435). The acceptance of such a plea is referred to as a settlement in common parlance (cf. statement by Assistant Attorney General in charge of Antitrust Division in 1949, quoted by Bergson in " Current Problems in the Enforcement of the Antitrust Law ", 39 Trade-Mark Reporter 187 [1949]; *Twin Ports Oil Co.* v. *Pure Oil Co.,* *supra*). Regardless of whether the nature of this charge as *malum prohibitum* could be sufficient under any view to constitute misconduct within section 64 of the General Corporation Law, petitioner's plea of *nolo contendere* did not determine his guilt for the purpose of a civil proceeding between himself and the corporation. Section 64 requires that it shall have been " *adjudged* in such action, suit or proceeding, that such officer, director or employee is liable for negligence or misconduct in the performance of his duties " (italics supplied).

In this context, an amendment to the Sherman Antitrust Law by the Clayton Act clarifies the effect of a plea of *nolo contendere* (38 U. S. Stat. 731, U. S. Code, tit. 15, § 16). This section is not directly in point, but establishes a standard of judgment which is controlling. It defines collaterally what does and what does not constitute *res judicata* between the parties in civil matters, while extending the estoppel of an antitrust judgment or decree for the benefit of third persons suing for civil damage. This section provides that " A final judgment or decree rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws *as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: Provided, this section shall not apply to consent judgments or decrees entered before any testimony has been taken* " (italics supplied). This section has been interpreted as placing on an equal footing consent decrees in equity and convictions entered upon pleas of *nolo contendere* (*Twin Ports Oil Co.* v. *Pure Oil Co.,* 26 F. Supp. 366, 371–372, *supra; Barnsdall Refining Corp.* v. *Birnamwood Oil Co.,* 32 F. Supp. 308, 311–312). In thus extending the benefit of the estoppel of the judgment (in some degree) to third parties who have sued to recover civil damages, which has been held to be its purpose (*Eastman Kodak Co.* v. *Southern Photo Material Co.,* 295 F. 98, affd. 273 U. S. 359), this statute indicates the scope of the estoppel of the judgment as between the parties themselves, by clearly inferring that a consent judgment or decree entered before any testimony has been taken is not " an estoppel as between the parties thereto ". This is a civil proceeding between a corporation and one of its officers. *People* v. *Daiboch* (265 N. Y. 125) cited at Special Term is not controlling. The Court of Appeals stated in its opinion therein: " In civil cases, however, the plea cannot be used or taken as an admission of the facts alleged in the indictment." (P. 129.)

A point of procedure remains to be considered. It is said that the New York State Supreme Court lacks jurisdiction to entertain this proceeding for the reason that petitioner's legal expenses were not incurred in an action or

proceeding maintained in a court of this State. Section 65 of the General Corporation Law provides that " Application * * * for assessment of expenses pursuant to section sixty-four of this chapter, may be made either (a) in the action, suit or proceeding brought in this state in which such expenses were incurred, or (b) to the supreme court in a separate proceeding." This language is said to prescribe that an assessment of expenses can be had only if they were incurred in connection with an action, suit or proceeding brought in a court of this State. Such a construction would preclude reimbursement of a corporate official for legal expenses incurred by him in defending a Federal antitrust suit. That the statute is not thus ́ limited appears to have been thought by the Law Revision Commission, whose 1945 Report referring to antitrust prosecutions (p. 161) was quoted in the opinion by Judge GODDARD, in denying petitioner's relief upon the ground that the United States District Court lacked jurisdiction. Judge GODDARD added: " To meet such a situation, the New York State Legislature provided in Section 65 that reimbursement might be sought [in] a special proceeding in the New York Supreme Court." (*Matter of Schwarz,* 94 F. Supp. 129, 130.)

The impression of Judge GODDARD and of the Law Revision Commission (which recommended the amendment to this legislation enacted by L. 1945, ch. 869) was not erroneous, that this legislation requires reimbursement for expenses of this character. This is demonstrated by section 68 of the General Corporation Law, which now reads as follows: " Sections sixty-four, sixty-five, sixty-six and sixty-seven of this chapter shall apply to an application made to a court in this state in *any* of the following cases: (a) when the corporation against whom the application is made for assessment of expenses pursuant to section sixty-four or for payment of expenses under the provisions of a certificate of incorporation, or other certificate filed pursuant to law, by-law or resolution, is a domestic corporation or a corporation doing business in this state; (b) when such expenses were incurred in an action or proceeding maintained in a court in this state; (c) when the application is made by a resident of this state and the director, officer or employee was a resident of this state at the time of the accrual of the alleged cause of action asserted in the litigation in which such expenses were incurred." (Italics supplied.)

If it had been intended to limit reimbursement of the corporate official to such expenses as were incurred in an action or proceeding maintained in a court of New York State, which is covered by subdivision (b), there would have been no occasion to include alternative subdivisions (a) and (c), which authorize assessment of expenses of this character incurred in litigation not maintained in courts in this State, if they are to be assessed against a domestic corporation or a corporation doing business in this State, or in favor of a resident of this State. The petition in this case shows that respondent is a corporation doing business in this State, and that petitioner is and was a resident thereof at the time of the accrual of the cause of action. If it had been the intention of the Legislature to limit the assessment of such expenses to those incurred in litigation maintained in the New York courts or pursuant to New York law, section 68 would have limited the application of sections 64–67 to the conditions prescribed by each of subdivisions (a), (b) and (c), instead of merely to those prescribed by any one of them in the alternative. This shows that petitioner properly has recourse under clause (b) of section 65 " to the supreme court in a separate proceeding ", where the application cannot be made under clause (a) of section 65 " in the action, suit or proceeding brought in this state in which such expenses were incurred ". Except for

section 68, it might be uncertain whether the separate proceeding could be instituted for anything other than the assessment of expenses incurred in litigation brought in a court of this State, but section 68 resolves that ambiguity and demonstrates that clauses (a) and (b) of section 65 are independent of each other.

The order appealed from should be reversed and respondent's motion to dismiss the application should be denied, with costs to appellant.

Dore, J. P., Cohn, Callahan and Shientag, JJ., concur in decision; Van Voorhis, J., dissents and votes to reverse and deny the application, in opinion.

Orders affirmed, with $20 costs and disbursements to respondent. No opinion. [198 Misc. 1046.]