OPINION OF THE COURT
Joseph J. Maltese, J.
After a bench trial, this court holds that, when the City of *339 New York granted a consent judgment in an identical case in this court declaring that part of a 51-year-old map of a proposed, but unopened, unbuilt street was “void and without legal effect,” it did more than settle that prior case; it manifested that the City had no plans to open and build that portion of the street. Consequently, the City should be -consistent in determining that the map of the neighboring parcel, which also sits in the bed of the same street, is likewise “void and of no legal effect.”
Facts
In 1995, the plaintiffs, Michael Chevere and Carmen Chevere, purchased a house at 393 Ridgewood Avenue, Staten Island, New York 10312. Their real property consists of two separate tax lots: lot 29 and lot 30 in section 20, block 5491. The house sits entirely upon lot 29. Lot 30 is an adjacent side yard that is 40 feet wide by 100 feet deep, which sits entirely in the bed of an unopened, unbuilt mapped street. The metes and bounds description in the deed inaccurately labels both lots as lot 29. However, the plaintiffs pay separate real property taxes on both lots 29 and 30, which the New York City tax map shows to be separate and distinct lots.
Fifty-one years ago, on August 20, 1959, the Board of Estimate of the City of New York approved official map number V575-2942. This map designated an 80-foot-wide street known as Barlow Avenue. Barlow Avenue has an incomplete, unpaved gap between Ridgewood Avenue and Cortelyou Avenue, running along a west-southwest to east-northeast axis, that was divided into four distinct tax lots. Each of the four lots that constitute the unopened, unbuilt portion of Barlow Avenue is 40 feet wide. Immediately adjacent to lot 30, located to the north on Ridge-wood Avenue, is block 5494, lot 1. The center line of the phantom part of Barlow Avenue would include the boundary between lot 1 to the north and lot 30 to the south, both fronting on Ridgewood Avenue.
At trial, the plaintiffs presented two expert witnesses, an experienced licenced real estate appraiser and broker and an experienced title insurance attorney. Both expert witnesses substantiated that lot 30 is not currently marketable because the New York City Buildings Department (DoB) will not issue a permit to build on a lot that lies in the bed of a mapped street. If the street was demapped, the real estate appraiser testified, the property would have a fair market value of $200,000. By *340 maintaining the mapped street, lot 30 is of little value to anyone other than the current owner, who uses it as a side yard.
Accordingly, the plaintiffs contend that by maintaining lot 30 as a mapped street the City of New York is violating their rights of alienation — to sell their property and to alleviate their real estate tax burden on this lot.
The plaintiffs’ neighbor, Janice Maugeri at 407 Ridgewood Avenue, inherited a house that sits on lot 2 of block 5494. Ms. Maugeri’s side yard, which is lot 1, lay in the bed of the unopened, unbuilt, but nonetheless mapped Barlow Avenue. Ms. Maugeri desired to sell lot 1, which was part of her side yard, and discovered that it was difficult to sell because of the mapping of Barlow Avenue for possible road construction. Ms. Maugeri contested the 1959 map in the Supreme Court, Richmond County,[1] claiming that pursuing a variance to build on the mapped street through the New York City Board of Standards and Appeals (BSA) would be excessively expensive and unnecessary because she did not want to build on lot 1. On May 30, 2000, the City settled Ms. Maugeri’s suit by declaring in a consent judgment that map V575-2942 was void and without legal effect as it applied to block 5494, lot 1, which constituted one quarter of the mapped but unbuilt portion of Barlow Avenue.
Now, the plaintiffs request the same relief for the neighboring lot 30 that was granted for lot 1. They ask that the mapping of Barlow Avenue across the entirety of lot 30 be declared void. The plaintiffs claim they are unable to sell lot 30 because of the cloud on the title that the street map casts upon their land. The plaintiffs assert that this impediment to sale is a taking by the City. As an alternative, the plaintiffs simply want their lot 30 to be demapped. The plaintiffs have no intent or plan to build upon, improve, or otherwise develop the lot; they only wish to sell it. Accordingly, the plaintiffs have not sought a building permit from the DoB to build upon lot 30. The plaintiffs state that proceeding through the BSA would be unnecessary and overly expensive.
Notwithstanding the fact that this is the mirror image of the previous action that the City settled by consent judgment, the City opposes this identical application. The defendant City claims that the plaintiffs have not exhausted their administra *341 tive remedies, and that the City is not obligated to offer the same result to different parties in this separate action. This application for the contiguous, adjacent parcel concerns the demapping of this 51-year-old unopened, unbuilt roadway, or declaring that portion of the map to be void and without legal effect, which is identical to what the City agreed to in the Maugeri case.
Discussion
The New York City Board of Estimate was the governmental body that was responsible for budget and land use decisions in the City of New York and was the entity that approved the mapping of Barlow Avenue. However, in 1989, the United States Supreme Court in Board of Estimate of City of New York v Morris[2] declared the New York City Board of Estimate unconstitutional on the grounds that Brooklyn, the city’s most populous borough, had no greater effective representation on the board than Staten Island, the city’s least populous borough. Pursuant to the 1964 “one man, one vote” decision of Reynolds v Sims,[3] the New York City Board of Estimate violated the Equal Protection Clause of the Fourteen Amendment of the US Constitution. Under the 1990 New York City Charter revisions, most of the responsibilities of the Board of Estimate were delegated to the New York City Council and other city agencies.
Well before the 1990 New York City Charter revisions, the New York City Board of Standards and Appeals has had authority to review “applications by any person or agency for changes, approvals, contracts, consents, permits or authorization thereof, respecting the use, development or improvement of real property.”[4] 5The word “use” is defined as “[t]he purpose for which a building, structure, or space is occupied or utilized, unless otherwise indicated by the text. Use (used) shall be construed as if followed by the words ‘or is intended, arranged, or designed to be used.’ ”[5] Development and improvement are not statutorily defined in this section, so plain meaning should be applied. “Develop” may be defined as “to convert (land) to a new purpose so as to use its resources, to use (an area) for the build *342 ing of houses or stores or factories, etc.”[6] “Improve” means “to make (land) more valuable, as by cultivating or building on it.”[7]
The City Planning Commission may only authorize the city map to be changed for the use, development or improvement of real property.[8] After review by the City Planning Commission, a request to change the city map goes to the New York City Council for review with the Planning Commission’s modifications, if any.[9] With the approval of the City Council, the changed map would be forwarded to the President of the Borough of Staten Island, where it would be maintained by the Topographical Bureau.[10] However, this mechanism is inapplicable since the plaintiffs have not stated an intent to use, develop or improve lot 30.
The New York City Administrative Code contains a proceeding to close a street that has been opened.* [11] However, here, there is no opened street nor are there plans to open Barlow Avenue. Therefore, this mechanism is also inapplicable. The New York City Charter provides a mechanism to abandon a street if the action were a part of waterfront plans,[12] but lot 30 is not part of a waterfront plan and thus that City Charter provision is inapplicable in this case. The City Charter states that there shall be no other means of changing the city map other than in accordance with the City Charter.[13] However, the City Charter does not explicitly address the desires of the plaintiffs, and leaves them without recourse.
The Corporation Counsel representing the City asserts that if the plaintiffs wish to build within a mapped portion of Barlow Avenue, the proper procedure would be to apply to the BSA for a variance. The City states that, in order for this action to be ripe for judicial review, there must have been a final administrative finding that has exhausted the plaintiffs’ administrative recourse. *343 [14] “[Procedural due process in the context of an agency determination requires that the agency provide an opportunity to be heard in a meaningful manner at a meaningful time.”[15]
In this case, there is no process available to provide a hearing for demapping. General City Law § 35 provides a mechanism for obtaining a permit to build in the bed of a mapped street, if the City has not acquired title to the land, and if there has been no construction of a roadway within 10 years of mapping.[16] If the plaintiffs’ lot were on a waterfront, there would be a mechanism to effect a change in mapping.[17] But these conditions are not present in this action. The plaintiffs only wish to sell their land, and to that purpose the plaintiffs want the mapped street on lot 30 to be demapped or declared void and of no legal effect.
The courts must take a pragmatic approach when determining exhaustion of administrative remedies.[18] Actions taken by an administrative body beyond the powers given by the legislature may result in judicial intervention.[19] When bureaucratic administrative action would impose undue hardship, judicial review may be sought.[20] An administrative action is impermissible if it goes beyond powers authorized by law. A property owner requesting administrative action that is beyond the legislated powers of an administrative body would be frustrated. Neither the BSA nor the City Planning Commission have been explicitly granted the authority to demap an unopened, unbuilt street. Therefore, requiring that the BSA or the City Planning Commission evaluate a request to demap property, unless it be for use, development or improvement, would be bureaucratically futile and needlessly costly.
The City, in identical circumstances in the past, entered into a consent judgment to declare the map in question void and without legal effect.[21] A court applying principles of equity may cause the City to apply the same rational bases of decision mak *344 ing in the current circumstances as it did in identical past circumstances.
At times, consent judgments have been expressly regarded as final judgments.[22] As final judgments, consent judgments have been alluded to when considering collateral estoppel and issue preclusion.[23] Further, as final judgments, consent judgments have also been the basis for judgments of res judicata.[24] Thus, as long as the elements of res judicata or collateral estoppel are met, a consent decree may carry weight in deciding an issue. Under the principle of res judicata, “a valid final judgment bars future actions between the same parties on the same cause of action.”[25] Here, the current plaintiffs are distinct from their neighbor, Ms. Maugeri, who was a party to the prior consent judgment. While, technically, res judicata is not applicable to the prior consent agreement involving lot 1, this court must ensure that the City is not acting arbitrarily and capriciously in dealing with the identical set of facts involving the same unopened street.
However, under the principle of collateral estoppel, it must be shown that there exists “an ‘identity of issue[s]’ necessarily decided in the prior action or proceeding and ‘a full and fair opportunity’ to contest the decision now said to be controlling.”[26] Since lot 1 is immediately adjacent to lot 30, the issues are as identical as mirror images of each other. Here, as well as in the preceding action, the plaintiffs declare a wish to sell land that was remotely mapped in 1959. Compared to surrounding property, the value of lot 30, as was the value of lot 1, is markedly depressed because of the mapping. The respective plaintiff then, as now, claimed she wanted to sell her lot, not to use or build upon the property. Each of the issues in this instant action is nearly identical to those of the previous action for lot 1 *345 that were settled by consent judgment. Therefore, it is appropriate that some weight should be given to the prior consent judgment, even if the court is reluctant to utilize collateral estoppel. For example, the defendant City itself wishes to use the consent judgment with Ms. Maugeri to demonstrate that its terms were limited to lot 1. This emphasizes the potential value of the prior consent judgment in determining the equity of the instant action.
Here, the defendant claims that the consent judgment with Ms. Maugeri should not be a precedent for the current action. The City points out that “an offer of compromise, which contains no express admission of fact, is not admissible in evidence against the maker, especially after suit is brought.”[27] This principle applies to “a claim which is disputed as to either validity or amount of damages.”[28] However, “the exclusion established by this section shall not limit the admissibility of such evidence when it is offered for another purpose.”[29]
Settlement offers may be disclosed in the process of discovery.[30] Evidence of settlement may be used to show credibility, or “for proving bias or prejudice of a witness.”[31] A settlement agreement resolving other disputes and not used to show liability in an action may be admissible.[32] Here, the settlement agreement is not used to show liability, but may be viewed as an indicator of what the City regarded as a reasonable and rational settlement in an identical circumstance. As such, the prior consent judgment is not used here as an admission of liability. But instead, the prior consent judgment may be used as a yardstick by which to gauge what the City would regard as a rational and *346 reasonable outcome when a mapping is over 50 years old and there is no intent to open that portion of the street. There is no other administrative recourse available to request demapping of an individual’s property.
The City Must Act Rationally, Not Capriciously or Arbitrarily
The defendant declares that its settlement with Ms. Maugeri does not preclude the construction of Barlow Avenue. Firstly, the City points out that the prior consent judgment specifically applies to lot 1, its owner, and its owner’s successors. That agreement allows the City to acquire property needed to construct Barlow Avenue without new mapping procedures.
The Corporation Counsel asserts that there is a long-term public advantage to the planning made possible by street mapping, and draws upon a 1936 decision of the Court of Appeals that stated, £<[o]nly time can prove whether the city has wisely gauged the future, and the city is under no compulsion to open any street shown on the map unless and until the legislative body of the city decides that it is actually needed.”[33] However, more recently, the Court of Appeals addressed the issue of requiring a “change in governing law” and deemed that it was “a possibly excessively burdensome course of action.”[34] Requiring the plaintiffs to undertake legislative action through the New York City Council is not a practical recourse, because it is excessively burdensome.
“Arbitrary action is without sound basis in reason and is generally taken without regard to the facts.”[35] An administrative “determination need only be supported by a ‘rational basis.’ ”[36] The court should be able to identify the reasons supporting an administrative decision, and the presence of valid reasons may show the decision is not arbitrary and capricious.[37] Here, the previous consent judgment made by the City is a measuring rod to tailor an equitable, reasonable and rational result to the plaintiffs’ request.
Block 5491, lot 30 was mapped by the City of New York as part of a possible roadway over a half a century ago. To modify *347 mapping, administrative procedures available to the citizen merely grant variances to use, develop or improve land affected by a city map. There is no administrative demapping process. Requiring a citizen to force legislative action as the sole means of protesting mapping would be exceedingly onerous. Consequently, there is no practical, existent means to achieve demapping of a planned roadway other than to seek equal treatment in the courts. The consent judgment between the City and the owner of the immediately adjacent block 5494, lot 1, was negotiated under identical circumstances. Both lot 30 and lot 1 concern properties mapped to be entirely in the bed of Barlow Avenue. Both properties are side lots adjacent to lots with existing homes. Both lots are properties said to be hard to sell because of the mapping. The two lots are properties for which the plan is to sell, not to use, develop or improve. The owners of both lots state that applying for demapping through the BSA would be unnecessary and prohibitively expensive. The prior consent judgment pertaining to lot 1 provides a standard for a reasonable and rational outcome to the instant action, which this court adopts.
Maintaining a Mapped Street is Not a Taking
The plaintiffs have argued that the mapping of Barlow Avenue was a “taking of property” without just compensation. The United States Supreme Court has held that when a government uses its own property in such a way as to destroy private property, it has taken that private property.[38] The Supreme Court further defines a taking as depriving an owner of all economic use of property.[39] In New York State, a permanent restriction on property “so that it may not be used for any reasonable purpose must be recognized as a taking.”[40]
A developer’s property was deemed to be taken when all the land for which an apartment building was planned was placed into the bed of a mapped street.[41] “The only difference between [a] restriction and an outright taking ... ‘is that the restriction leaves the owner subject to the burden of payment of taxation, while outright confiscation would relieve [the owner] *348 of that burden.’ ”[42] When a limitation is placed on some use of land, it must be in furtherance of reasonable, legitimate government objectives.[43] Private use may be a suitable alternative use of property that has lost potential for commercial use.[44] Here, lot 30 adjoins its owner’s lot 29 and is thus usable for suitable private and personal recreational use by the owner. Hence, the mapping of a street on lot 30 has not eliminated its private use by the plaintiffs.
The New York Court of Appeals, in Jensen v City of New York, held that it was a taking where a resident’s lot with an existing home was newly placed on a road planning map adopted by the city for an indefinite time period.[45] However, in a different action, when land that had been already mapped was purchased, and a decision by the BSA denied permission to build, a trial court upheld the denial, and the Appellate Division, Second Department, affirmed the denial with a finding that there had been no taking.[46] But in yet another action, when only a portion of land was mapped and the owner divided and sold the unmapped portion, the mapped portion remaining was not considered to have been taken despite the low valuation of the residuum.[47] In still another action, plaintiffs purchased property after it had been mapped for a road and claimed difficulty in selling it. Summary judgment was granted to the defendant City since there was no taking by right.[48] However, in that action, there had been no adjacent lot for which demapping had occurred. Thus, a taking was found only when new mapping resulted in a precipitous decrease in value to an existing owner. The facts of the foregoing cases are distinguishable from the instant action.
The City argues that lot 30 retains a residue of economic value because the maintenance of the map of Barlow Avenue is not a taking. The plaintiffs had purchased lot 30 when it was already mapped. The plaintiffs have not put forth any representation that the relative value of lot 30 at the time of their purchase *349 was proportionately diminished by continued ownership so as to constitute a taking. In fact, there has been no showing that the continued mapping has diminished the relative value of the property below its previous relative value when purchased.
The property owner’s loss of value must be precisely calculable.[49] Even if there has been a decrease in value, “mere diminution in the value of property, however serious, is insufficient to demonstrate a taking.”[50]
The City contends that, when the plaintiffs purchased lot 30, relevant documents clearly showed that the property was subject to the previous mapping of Barlow Avenue. The plaintiffs have not shown that they lost relative value. In a sense, the price the plaintiffs paid for the land they originally purchased was perhaps already discounted by the mapping of Barlow Avenue. The preexisting mapping onto lot 30 did not result in a relative decline in the value of the lot imposed upon the unwitting purchasers of previously unmapped land. Therefore, the existing mapping of Barlow Avenue onto lot 30 was not a taking.
The defendant City also suggests that the plaintiffs should only receive one dollar if the City were to take lot 30 pursuant to a dollar condemnation clause, an existing covenant that runs with the land. The dollar condemnation clause provides that if the City takes the land by eminent domain it is only liable to pay one dollar for it. But here, the dollar condemnation clause per se is not an issue in this action.
Policy Supports a Determinable End Point for Unrealized Action
Usage of law commonly provides for limiting the otherwise interminable. There are several reasons to employ time limits in law. One important reason for time limits is to establish finality.[51] Contrary to this desirable principle, there is no statutory time limit following which a street mapping becomes defunct. As noted above, General City Law § 35 provides a mechanism whereby an owner of property mapped for 10 years or longer may be given a variance to build.[52] The board of appeals *350 or similar board in a city, such as the BSA, may make variances and impose reasonable requirements for the benefit of the city if they will “as little as practicable increase the cost of opening such street or highway.”[53] The plaintiffs argue that the indefinite appropriation of property inhibits efficient use of the land. The defendant argues that the City may still wish to use the phantom road that is mapped across lot 30 and build a road upon it at some indefinite time in the future. The plaintiffs have no planned use for lot 30 other than to sell it. The defendant City has no projected use for lot 30 other than to maintain its mapped status inviolate and to collect real property taxes for it.
The plaintiffs have made an argument based upon laches that the City had over half a century to assert its right to open Barlow Avenue and has slept on its rights. Therefore, equitably, the plaintiffs who have been paying real estate taxes for lot 30, which lies in the bed of a mapped street, should be permitted to sell it to relieve their tax burden. Generally, laches is not applied to enforcing zoning restrictions or when environmental protection is invoked as a matter of public policy.[54] Moreover, laches has never been used to demap a street.
The City does not have an applicable appellate process simply to demap properties once they have been mapped. Absent such a process, either legislative or judicial recourse is the only appeal mechanism in order to demap. The New York Supreme Court “ ‘is competent to entertain all causes of action[ ] unless its jurisdiction has been specifically proscribed.’ ”[55] The legislature has not expressly limited or prohibited judicial action in demapping a street. The City has not argued there is legislative preemption for demapping. However, the government may mandate a moratorium on an owner’s use of land to endure for a reasonable length of time.[56] The duration of reasonable restriction should be definite, even if it lasts as long as 18 years.[57] *351 Two years[58] and four years[59] of moratoria have been declared not to be overly excessive. It has been over 50 years since the City mapped lot 30 and the City has still not used it. There should be a definite finality for certain nebulous government plans.
Requiring an individual property owner to seek redress through the legislative process would be onerous and effectively impracticable. Therefore, the courts may, in equity and justice, evaluate a claim for relief because the judiciary is the only practical mechanism from which these plaintiffs may seek redress under these circumstances. Over half a century has passed by without a concrete proposal from the City to use the property as it was supposed to have been used when it was first mapped. A half century is an unreasonable amount of time to hold a decision in abeyance ón building a road. Here, the City, through a consent judgment concerning the adjacent lot, declared that map to be void and without legal effect as to lot 1. By granting the consent judgment, the City has manifested no intent to open and build that portion of Barlow Avenue. Accordingly, this court finds no reason to rule that the plaintiffs who have the adjacent lot 30 should be treated differently. To arbitrarily compel them to file a building permit with the Buildings Department, only to have it denied so that they can appeal that decision to the Board of Standards and Appeals, which may or may not grant a 15-year temporary variance that must be renewed at its expiration, is merely a series of hurdles to dissuade the plaintiffs from obtaining a consistent result. In the event the BSA denied such a variance, these plaintiffs could appeal that determination to this court to ascertain whether that city agency acted arbitrarily and capriciously.
It is not the role of the courts to circumvent the procedures of administrative agencies and their appellate processes. However, the facts presented in this unique case make such an application for a building permit inappropriate by the plaintiffs. Consequently, this court holds that the City should treat the plaintiffs in the same manner as their neighbor was treated in declaring that the map of the unopened portion of Barlow Avenue be declared void and that the plaintiffs’ property be capable of being sold.
*352 Accordingly, it is hereby ordered, that official map number V575-2942 of Barlow Avenue, adopted by the Board of Estimate on August 20, 1959, is hereby void and without legal effect as applied to tax map of the City of New York for the Borough of Staten Island, surveyed on November 20, 2002, as section 20, volume 1, block 5491, lot 30; and it is further ordered, that the plaintiffs and their successors in interest shall not be relieved of the obligation to comply with any zoning or other applicable laws; and it is further ordered, that nothing contained in this order will require the City to initiate any demapping proceeding with regard to Barlow Avenue, or any portions thereof, and the City may proceed to acquire said street, including the parcel described in this order, without initiating any new mapping proceedings; and it is further ordered, that the City of New York need not change the topographical map for Barlow Avenue, but shall place a legend on each such map indicating in substance that the map is void and of no effect as applied to the aforesaid property, known as block 5491, lot 30, in accordance with this order; and it is further ordered, that a judgment shall be entered and recorded in compliance with this order.

. Maugeri v City of New York, Sup Ct, Richmond County, Mega, J., index No. 12676/2000.

. 489 US 688 (1989).

. 377 US 533 (1964).

. NY City Charter, ch 8 (“City Planning”), § 197-c (a).

. Administrative Code of City of NY § 27-232.

. Oxford American Dictionary 235 (Heald Colleges ed 1980).

. Id. at 442.

. City Charter, ch 8, §§ 197-c, 198.

. Id. § 197-d.

. See footnote to 45 RCNY ch 5, subchapter B, which reads: “The Topographical Bureau of the Staten Island Borough President’s office is responsible for maintaining various records, maps, surveys, topographical data, house and building street number data and other related materials.”

. Administrative Code §§ 5-433 — 5-435.

. City Charter, ch 56, § 1302 (a), (c).

. City Charter, ch 8, § 199.

. Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 (1978); Petosa v City of New York, 135 AD2d 800, 802 (2d Dept 1987).

. Matter of Kaur v New York State Urban Dev. Corp., 15 NY3d 235, 260 (2010); see Mathews v Eldridge, 424 US 319, 333 (1976).

. General City Law § 35; City Charter, ch 8, §§ 197-c, 198.

. City Charter, ch 56, § 1302 (a), (c).

. Walton v New York State Dept. of Correctional Servs., 8 NY3d 186, 196 (2007).

. CPLR 7803 (2); Matter of Doe v Axelrod, 71 NY2d 484, 490 (1988).

. Matter of Ward v Bennett, 79 NY2d 394, 400-401 (1992).

. Maugeri v City of New York, Sup Ct, Richmond County, Mega, J., index No. 12676/2000.

. Schwarz v General Aniline & Film Corp., 279 App Div 996, 999 (4th Dept 1952); People v Monex Intl., 86 Misc 2d 320, 325 (Sup Ct, NY County 1975).

. Matter of Halyalkar v Board of Regents of State of N.Y., 72 NY2d 261, 268 (1988); Kossover v Trattler, 82 AD2d 610, 623 (2d Dept 1981, Gibbons, J., concurring); see also Fountaine, Due Process and the Impermissible Collateral Attack Rule in Employment Discrimination Cases: an Analysis of Section 108 of the Civil Rights Act of 1991, 58 U Pitt L Rev 435 (winter 1997), and especially at 435 n 2.

. State of New York v General Motors Corp., 48 NY2d 836, 838 (1979); Silverman v Leucadia, Inc., 156 AD2d 442, 443 (2d Dept 1989).

. Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 347 (1999).

. Matter of Camperlengo v Barell, 78 NY2d 674, 680 (1991), quoting Ryan v New York Tel. Co., 62 NY2d 494, 500-501 (1984).

. Union Bank of Brooklyn v Deshel, 139 App Div 217, 219 (2d Dept 1910); see also Bigelow-Sanford v Specialized Commercial Floors of Rochester, 77 AD2d 464, 465 (4th Dept 1980); importantly see CPLR 4547.

. CPLR 4547.

. CPLR 4547; see also Soumayah v Minnelli, 41 AD3d 390, 394-395 (1st Dept 2007, Mazzarelli, J.E, dissenting).

. Matter of Town of Waterford v New York State Dept. of Envtl. Conservation, 77 AD3d 224, 233 (3d Dept 2010).

. Stevens v Atwal, 30 AD3d 993, 994 (4th Dept 2006); Maldonado v Cotter, 256 AD2d 1073, 1075 (4th Dept 1998); Hill v Arnold, 226 AD2d 232, 233 (1st Dept 1996); Hayes v Henault, 131 AD2d 930, 932 (3d Dept 1987); Andresen v Kirschner, 190 Misc 2d 779, 780-781 (Sup Ct, NY County 2001), revd 297 AD2d 235 (1st Dept 2002) (reinstating jury verdict).

. Matter of Midland Ins. Co., 18 Misc 3d 1117(A), 2008 NY Slip Op 50110(U), *9-10 (Sup Ct, NY County 2008), subsequently reviewed on other grounds Matter of Midland Ins. Co., 20 Misc 3d 488 (Sup Ct, NY County 2008), revd 71 AD3d 221 (1st Dept 2010).

. Headley v City of Rochester, 272 NY 197, 201 (1936).

. Ward v Bennett, 79 NY2d at 401.

. Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 (1974).

. Matter of County of Monroe v Kaladjian, 83 NY2d 185, 189 (1994); see also Matter of Heintz v Brown, 80 NY2d 998, 1001 (1992).

. Matter of County of Monroe v Kaladjian, 83 NY2d at 189.

. Stop the Beach Renourishment Inc. v Florida Dept. of Environmental Protection, 558 US —, —, 130 S Ct 2592, 2601 (2010).

. Id.

. Matter of Golden v Planning Bd. of Town of Ramapo, 30 NY2d 359, 380 (1972), appeal dismissed 409 US 1003 (1972).

. Roer Constr. Corp. v City of New Rochelle, 207 Misc 46 (Sup Ct, Special Term, Westchester County 1954).

. Matter of Golden v Planning Bd. of Town of Ramapo, 30 NY2d at 380, quoting Arverne Bay Constr. Co. v Thatcher, 278 NY 222, 232 (1938).

. Bonnie Briar Syndicate v Town of Mamaroneck, 94 NY2d 96, 103-104 (1999).

. Spears v Berle, 48 NY2d 254, 263 (1979).

. 42 NY2d 1079, 1086 (1977).

. Ward v Bennett at 681.

. Corbett v City of New York, 114 AD2d 435 (2d Dept 1985).

. Royal v City of New York, Sup Ct, Richmond County, 2008, Aliotta, J., index No. 100886/2007 (motion for summary judgment).

. Matter of Smith v Williams, 166 AD2d 536 (2d Dept 1990).

. Concrete Pipe & Products of Cal., Inc. v Construction Laborers Pension Trust for Southern Cal., 508 US 602, 645 (1993); Matter of Gazza v New York State Dept. of Envtl. Conservation, 89 NY2d 603, 618 (1993).

. Heslin v County of Greene, 14 NY3d 67, 81 (2010).

. General City Law § 35.

. Id.

. Matter of Parkview Assoc. v City of New York, 71 NY2d 274, 282 (1988); Matter of E.F.S. Ventures Corp. v Foster, 71 NY2d 359, 370-371 (1988), citing People v Department of Hous. & Community Dev., 45 Cal App 3d 185, 119 Cal Rptr 266 (3d Dist 1975).

. People v Correa, 15 NY3d 213, 227 (2010), quoting Thrasher v United States Liab. Ins. Co., 19 NY2d 159, 166 (1967).

. Matter of Russo v New York State Dept. of Envtl. Conservation, 55 AD2d 935 (2d Dept 1977).

. Matter of Golden v Planning Bd. of Town of Ramapo, 30 NY2d 359, 382 (1972).

. Matter of New York City Hous. Auth. v Commissioner of Envtl. Conservation Dept. of State of N.Y., 83 Misc 2d 89, 94 (Sup Ct, Queens County 1975).

. de St. Aubin v Biggane, 51 AD2d 1054, 1055 (2d Dept 1976).